## City of Philadelphia *versus* Linnard.

1. Where property is taken for public use, the damage is to be estimated as of the date when the injury was complete and the landowner was entitled to compensation, the property to be valued without reference to the person of the owner or the actual state of his business, the true measure of damages being the difference between the market value of the land as affected by the taking of part for public use and such value as unaffected thereby. Any fact which affects the value of the land at the time of the injury is admissible.

2. Where the owner of premises on the south side of Chestnut street, Philadelphia, in making alterations, was compelled, by virtue of the provisions of the Act of April 28th 1870, to recede five feet from the former building-line, and was thus forced to rebuild in a recess between two unaltered adjacent buildings extending to said old line: *Held*, that the fact that said owner voluntarily began his alterations did not preclude him from recovering damages for the amount of land taken for public use. *Held*, further, that the inconvenience to occupants of the property caused by the recession of the front, and the consequent difficulty of procuring tenants, were both to be estimated as elements of damage. *Held*, further, that in determining the market value of the property after the recession, the possibility that the adjoining houses would be set back at some future period was to be considered as an element of the present value.

3. Newville Road Case, 8 Watts 172, followed. Pitts., V. & C. Railroad Co. *v.* Rose, 24 P. F. Smith 362; Watson *v.* P. & C. Railroad Co., 1 Wright 469, distinguished.

4. The Courts of Common Pleas have no jurisdiction to hear and pass upon exceptions filed to the reports of referees appointed under the Act of May 14th 1874, Pamph. L. 166. Such reports can only be reviewed upon error to the Supreme Court.

5. The findings of a referee appointed by the parties under the Act of May 14th 1874, on a question of fact, are as conclusive as those of a jury.

February 21st and 22d 1881. Before SHARSWOOD, C. J., GORDON, PAXSON, TRUNKEY STERRETT and GREEN, JJ. MERCUR J., absent.

Error to the Court of Common Pleas No. 1, of *Philadelphia county*: Of January Term 1881, No. 14.

This was, in the court below, an appeal by Emily L. Linnard from the award of a jury of viewers appointed by the Court of Quarter Sessions to view the premises No. 1312 Chestnut street, and to assess the damages occasioned by the widening of Chestnut street opposite the said premises.

By agreement filed, the case was submitted to the decision of a referee, C. Stuart Patterson, Esq., under the provisions of the Act of May 14th 1874, Purd. Dig. 1940, who found the facts substantially as follows: Prior to April 28th 1870, the south line of Chestnut street, between the rivers Delaware and Schuylkill, was established at the distance of 534 feet southward from the south line of Market street. Mrs. Linnard was the owner of a lot of ground situate on the south side of Chestnut street at the distance of 111 feet westward from Thirteenth street, containing in front on Chestnut street 18 feet 6 inches, and extending in depth of that width 109 feet to Diamond street. On this lot there was erected a brick building, the first story of which was built out to the old line of Chestnut street.

By the Act of April 28th 1870, Pamph. L. 1291, entitled " An act defining the line of Chestnut street, in the city of Philadelphia," it was enacted " that the south line of Chestnut street, between the rivers Delaware and Schuylkill, shall be at the distance of five hundred and thirty-nine feet southward of the south side of Market street: Provided that this act shall not interfere with any buildings now erected on the south side of Chestnut street."

In July 1875, Mrs. Linnard contracted with a builder to tear down the building on the front of her lot, and rebuild a four-story brick building thereon. The building inspectors and the district surveyor, on application for a permit to rebuild, gave the new line as established by the Act of 1870, and the city solicitor notified the plaintiff that the front wall of the new building must be set back to the new line, five feet in the rear of the old line; whereby the sidewalk in front of the plaintiff's property was widened five feet.

The referee reported, inter alia, as follows : " The city has therefore taken for public uses a strip of the plaintiff's ground, five feet in depth by the width of the plaintiff's property in breadth, and has thereby increased by five feet the width of the paved sidewalk in front of the plaintiff's property. But the buildings on No. 1310, the property adjoining on the east, and on No. 1314, the property adjoining on the west, are still out on the old line. The front of the plaintiff's property is, therefore, in a recess of five feet in depth between those buildings. Neither the plaintiff nor the city can, under existing legislation, compel the owners of those properties to pull down the buildings now on them

and to retire to the new line.    There is no possible way of determining when they will voluntarily conform to the plaintiff's line, or when fire or other accident will compel them to rebuild.

"It is true that the plaintiff voluntarily tore down the old front wall, and that knowledge of the provisions of the Act of 28th of April 1870 must be imputed to her.    The plaintiff, in rebuilding and substituting a new for an old front wall, was exercising her right as an owner.    She was bound to take the consequences of her act.    That consequence is that the city has, by force of law, taken some of her property for public use; but it does not follow from that, that she is to be denied just compensation therefor.    [The referee here reviewed numerous authorities.]    From these cases it results, that the compensation to be awarded to the plaintiff is the pecuniary equivalent of the diminution in value of No. 1312 Chestnut street, directly and necessarily resulting from the appropriation to public uses of the ground taken; also considering as elements of damage the inconvenience to occupants of the property caused by the recession of its front between the adjoining houses, and the consequent difficulty of procuring constant tenants, but not regarding the conjectural appreciation in value by reason of a possible recession of either or both the adjoining buildings at some indefinite time in the future.

"It also follows that the diminution in value, thus defined, must be determined in amount by the opinion of competent witnesses, and not by a capitalization of the rental for any given time, for the rent of a property depends upon conditions which necessarily fluctuate from time to time, and which cannot be predicted with even approximate accuracy." * * *

"As a result of a patient and careful consideration of all the testimony in the cause, I assess the plaintiff's damages at $7500; and I enter judgment against the defendant for that sum, with interest from 1st July 1875, and costs."

The referee's report was filed April 23d 1880.    The defendant filed, inter alia, the following exceptions:

1.  Because the learned referee erred in finding as a fact that the city has taken for public use a strip of the plaintiff's property, five feet in depth by the width of the lot.

2.  Because the learned referee erred in not finding that the taking of the said five feet of ground was attributable solely to the action of the plaintiff.

3.  Because the referee erred in finding that the compensation to be awarded to the plaintiff is the pecuniary equivalent of the diminution in value of No. 1312 Chestnut street, directly and necessarily resulting from the appropriation to public uses of the ground taken, [also considering as elements of damages the inconvenience to occupants of the property caused by the recession of its front between the adjoining houses, and the consequent difficulty

[City of Philadelphia *v.* Linnard.]

of procuring constant tenants, but not regarding the conjectural appreciation in value by reason of a possible recession of either or both the adjoining buildings at some indefinite time in the future.] (1st assignment of error.)

4. Because the learned referee erred in not finding that the sole compensation the plaintiff was entitled to recover was the difference between the market value of the lot before and after the alleged taking of the said five feet, without any reference to the character of the erection thereon, or of the business carried on therein by the tenant. (2d assignment.)

When the case was called for argument in the Common Pleas upon the exceptions to the referee's report, the question was raised by counsel whether, under the Act of May 14th 1874, the Common Pleas had jurisdiction to entertain the exceptions, and whether the decision of the referee, when filed in the Common Pleas, was not, by force of the act, a final judgment to which a writ of error would lie.

The court thereupon declined to hear the exceptions in this case " for the reason that the Supreme Court having taken jurisdiction in another case upon an appeal from the decision of a referee to the Supreme Court, we hold that such action is binding upon us ; and for this reason we decline to entertain the question raised by the exceptions."

The exceptions were afterwards submitted to the referee, who, on September 1st 1880, filed a supplemental report, setting forth that he did not find anything therein to change the conclusions to which he came in this report. Thereupon the defendant sued out this writ of error, assigning for error the refusal of the court to entertain the exceptions, and the refusal of the referee to sustain the exceptions to his finding and judgment.

*C. E. Morgan, Jr.*, Assistant City Solicitor (with him *William Nelson West*, City Solicitor), for the plaintiff in error.—1. There is nothing in the Reference Act of May 14th 1874, repugnant to the construction that the Court of Common Pleas has jurisdiction to review the finding of the referee. While there are some expressions, which by implication are capable of a different construction, the tenor of the entire act is against a construction which would oust the jurisdiction and make the referee superior to a judge of the Common Pleas. The object of the act was to enable parties to expedite their suit by waiving a jury trial, and agreeing to a submission to a referee in the same manner as to the court under the Act of April 22d 1874, Pamph. L. 109. Under the latter act, the finding of the judge is subject to review, upon exceptions, by the court sitting in banc. By sect. 3 of the act in question, the referee has the powers " that would belong to the court under a like submission." The decision of the referee " shall

[City of Philadelphia *v.* Linnard.]

in like manner, and to the same extent, be subject to *exceptions*
and writ of error or appeal, as in cases submitted in like manner
to the court." Subsequent sections provides that the court *in which
the suit is pending* may, for certain causes, " set aside the agreement
for submission ;" and that the court shall " after due examination"
direct the taxation of the referee's costs; also that the Supreme
Court may, " after the decision or judgment of such referee has
been *by due course of law* brought before them," review the judg-
ment. The referee cannot " by due course of law" certify the
record to the Supreme Court in response to a writ of error; he
cannot award execution or grant a rehearing, because his office is
*functus officio* immediately upon the filing of his decision in the
Common Pleas. The judgment then becomes " a judgment of the
court," and it would be contrary to due course of law to wrest
from the court its right to open, rehear and decide upon the merits
of its own judgment. A statute giving a new jurisdiction ought
to be construed strictly, and the jurisdiction of the superior courts
is not to be ousted in favor of an inferior tribunal by mere implica-
tion : Dwarris on Statutes 259. The construction for which we
contend renders all parts of the act in question consistent, and is
supported by the decision of THAYER, P. J., in Collins *v.* City, 8
W. N. C. 409. The contrary interpretation deprives the suitor
of his right to have a rehearing upon the facts and to have the
judges pass upon the questions of law. Such an interpretation
would render the act unconstitutional, because the General As-
sembly is prohibited from " creating other courts to exercise the
powers vested by this Constitution in the judges of the Courts of
Common Pleas :" Constitution, art. v., sects. 26 and 27.

2. The referee erred in awarding damages, for the following rea-
sons : The injury of which the plaintiff complained was due entirely
to her own act. The testimony of all the experts was to the effect
that the loss of the five feet is an advantage rather than an injury
to the plaintiff's property. In considering the elements of damage
and advantage caused by the recession of the plaintiff's building,
the referee erred in refusing to regard the appreciation in value by
reason of the future recession of the adjoining buildings to the new
line. As the finding of the referee on the facts has not been re-
viewed elsewhere, it is necessary to ask this court to look at the
evidence.

*Samuel B. Huey*, for the defendant in error.—1. A referee,
under the Act of 1874, is invested with the full powers of a court
and jury to find the facts, to declare the law and file a decision,
which thereupon " shall be considered a judgment of the court."
This being so, it is to the judgment of the referee alone that the
writ of error goes, although nominally entitled as of the court
in which the record remains; and such writs have been frequently

entertained by this court: Smith v. Ins. Co., 7 W. N. C. 365; MacDowell v. Ackley, 8 Id. 464; Lee v. Keys, 7 Norris 175; Hillbron v. McNichol, Jan. T. 1880, 84. In Collins v. City, 8 W. N. C. 409, the Common Pleas No. 4, of Philadelphia county entertained the jurisdiction on exceptions to a referee's decision under the act in question, but the point was not argued, nor was it assigned for error in the Supreme Court. The construction given to the local Act of April 6th 1869, Pamph. L. 725, and its supplement of January 20th 1870, Pamph. L. 85, which were substantially similar to the act in question, was in accordance with our view: Butterfield v. Lathrop, 21 P. F. Smith 225; Fall Creek Co. v. Smith, Id. 230; Thornton v. Enterprise Ins. Co., Id. 234, 237. The act is not obnoxious to the Constitution, because the submission to a referee is not mandatory, but permissive only, and the parties themselves, by their agreement, created the tribunal.

2. The principles on which the referee based his decision on the measure of damages are supported by authority: Schuylkill Nav. Co. v. Thoburn, 7 S. & R. 410; Railroad Co. v. Stauffer, 10 P. F. Smith 374; Railroad Co. v. Rose, 24 Id. 362; Watson v. Railroad Co., 1 Wright 469.

Mr. Justice TRUNKEY delivered the opinion of the court, May 2d 1881.

In such case as this the rule for measurement of damages is settled by a uniform current of decisions, taking its rise in Schuylkill Navigation Co. v. Thoburn, 7 S. & R. 410. The damage is to be estimated as of the date when the injury was complete, and the land-owner had a right to receive compensation; the property to be valued without reference to the owner, or the actual state of his business; the true measure of damages being the difference between the market value of the land as affected by the taking of part for the street, and such value as unaffected. What would Mrs. Linnard's land have sold for at and immediately before the street was widened at its front? What would it have then sold for as affected by widening the street? The difference is the sum to which she is entitled. Many things may be considered as elements of damage, such as inconvenience to occupants of the property caused by recession of the front, and the difficulty of procuring constant tenants. These aid in fixing the value of the property. They are not to be considered with reference to a particular business. Though the property were ruined for its former use, if worth as much or more for another use, the owner suffered no damage for which she can recover. The pivotal inquiry is as to how much the property, as it was when injured, was diminished in value. The lot with its improvements was worth a certain sum; to estimate the loss by referring to more valuable improvements subsequently constructed would be error. For instance, if the new

[City of Philadelphia *v.* Linnard.]

building would rent for more than the old, the new would be a false basis from which to estimate rents or value of the lot as affected by widening the street.

The learned referee appears to have clearly apprehended the rule for measuring damages. We do not think he intended to decide that any elements of damage such as inconvenience to occupants, and decrease in rents, should be considered in other light than as bearing on the question of value of the land at the time of the injury. But he refused to regard "the conjectural appreciation in value by reason of a possible recession of either or both the adjoining buildings at some indefinite time in the future." For this refusal, he rested on P., V. & C. R. R. Co. *v.* Rose, 24 P. F. F. Smith 362, and Watson *v.* P. & C. R. R. Co., 1 Wright 469. In the former case, the company had proposed to make improvements by grading and improving the street, unconnected with the finishing of their railway, and it was ruled that the case should be considered without reference to the proposal. To make such improvement, the company was not bound by law or contract. It was a naked proposition, worthless in itself, and to such as that the decision relates. In the other case, the point was upon an offer of testimony by the plaintiff respecting the value of the land as injured, and as it would be if uninjured. After repeating the rule as to damages, STRONG, J., said, "His attempted mode of proof of the difference between the two values was entirely inadmissible. His offers all had the same fault. They proposed to submit to the jury the conjecture of witnesses as to what the plaintiff's lands would be worth, or what their market value would be, at some unknown future time, when the railroad shall have been constructed. Such testimony does not rise even to the standard of an opinion. It is a mere guess with no substantial foundation upon which to rest." A glance reveals that the language applies to an absurd offer of evidence, and does not mean that testimony showing increased value of the land because of the railroad, or advantages arising from it, shall be excluded. The inquiry was as to the effect of the injury upon the value at the time, not how the value might be affected in the future. Any fact which affects the value of the land at the time of the injury is admissible. Thus, in the Newville Road Case, 8 Watts 172, the court remark : "And the viewers are presumed to have taken into consideration, as it was their duty to do, as well the possibility of the road reverting back to the proprietors by being vacated at some future time; as the rights left to him under and over the highway in subservience to the public passage." Upon the vacation, a possible but uncertain event, the road reverts, and this is to be considered in appraising damages. Under the operation of the Act of April 28th 1870, Pamph. L. 1291, it is reasonably certain that between the two rivers all buildings will be removed from the old line of Chestnut street. When

[City of Philadelphia v. Linnard]

this shall be accomplished is uncertain. When done, the very inconveniences and difficulties arising from the recess of Mrs. Linnard's property will cease. How can the value of the property be determined, or the amount of damages, without considering the fact that all buildings erected subsequent to the Act of 1870, must be as far from Market street as the one on the lot in question? The first specification of error is sustained.

An act to provide for the submission of civil cases to the decision of the court, and to dispense with trial by jury, was enacted April 22d 1874, Pamph. L. 109. On the 14th of May following (Id. 166), an act was approved to provide for the submission of civil cases, by agreement of the parties, to a referee learned in the law, which can be readily understood by reference to the prior Act of 22d April. It enables the parties, by written agreement, to submit any civil case to the decision of a person learned in the law, in like manner as it could be submitted to the decision of the court. The referee derives his authority by said agreement, not by the court's appointment, and "so far as relates to the case and the duties he is to perform as referee, shall, after acceptance of his appointment, be subject to the same control by the Supreme Court as the court below would be in regard to a cause submitted to them in like manner." In all things pertaining to the trial and decision of the case he shall have the powers and perform the duties that would belong to the court under a like submission.

The decision shall be filed of record, "and in like manner and to the same extent shall be subject to exceptions and writ of error or appeal," as in cases submitted to the court. The judgment entered upon his decision shall be considered the judgment of the court, and thereafter the referee's power is ended, unless the case be referred back to him by the Supreme Court. On writ of error or appeal, the Supreme Court may remit the case for further hearing before the referee, or make such other order as may be proper to protect the rights of the parties. For certain causes, the court in which the suit is pending may set aside the agreement of submission; and said court has power to settle the amount of the referee's costs and direct its taxation. The respective powers and duties of the referee, of the court where the cause is pending and of the Supreme Court are well defined. No provision is made for the hearing of exceptions or otherwise reviewing or controlling the decision of the referee by the Court of Common Pleas. It is plain that no power is given to that court over the referee or his decision other than is expressed. The power of control and review is expressed to be in the Supreme Court. Moreover, this statute is similar to the prior local Acts of April 6th 1869, Pamph. L. 725, and January 20th 1870, Id. 85, under which it had been decided that the Common Pleas had no power whatever to re-examine and pass upon the report of the referee: Thornton v. Enterprise Ins.

[City of Philadelphia *v.* Linnard.]

Co., 21 P. F. Smith 234; Butterfield *v.* Lathrop, Ia. 225. The meaning of those statutes on the point in question had been judicially ascertained, and therefore the latter statute in similar terms, enacted in view of that adjudication, has the same intendment.

It is urged that this statute is in conflict with art. V., sects. 26 and 27 of the Constitution. Sect. 26 prohibits the creating of other courts to exercise the powers vested in the judges of the Courts of Common Pleas and Orphans' Court. A new court is not created. The statute only applies to causes pending in Courts of Common Pleas and Orphans' Courts, and civil suits cannot be instituted elsewhere till new courts are created. By agreement, the parties to a pending suit may waive jury trial, and submit the matters at variance between them to a referee, and judgment is entered on his decision. This no more violates the constitutional provision than would an agreement by the parties confessing judgment in vacation. Sect. 27 imposes the duty upon the court, when the parties file an agreement to that end, to hear and determine the cause. Prior to the Constitution of 1873, the legislature could authorize the parties to make an agreement of submission to a referee, and to that is now added the power to compel the courts to hear and determine issues of fact as well as of law, where the parties so elect.

In a writ of error under the Act of May 14th 1874, this court can hear and determine only questions of law involved in the rulings of the referee relating to the evidence or the law of the case. His findings of fact are as conclusive as the verdict of a jury. If the point were made before him that there was no evidence to warrant the plaintiff's recovery, or no evidence to warrant the finding of a disputed fact, its disposition could be reviewed the same as when made in a jury trial: Lee *v.* Keys, 7 Norris 175.

It is claimed that "the plaintiff below is not entitled to recovery because the injury of which she complains is due entirely to her own action." This point is well answered by the referee. By force of law, the instant the old building was torn down the city took part of the land for public use, and is liable to make compensation to the owner, the same as if it had been taken in any other mode.

None of the assignments of error can be sustained except the first. With reference to the second, there was no request for the ruling therein stated. Had it been desired, the point could have been made in like manner as if the trial were before a court and jury. The referee may have acted in accord with the principle, though it is not stated in his opinion.

> Judgment reversed, and it is ordered that the record be remitted to the court below for a re-hearing before the referee