## THE WIDENING OF CHESTNUT STREET, PHILADELPHIA.

|118|593|
|142|357|
|118|593|
|202|471|
|118|593|
|d206|¹521|

CERTIORARI TO THE COURT OF QUARTER SESSIONS OF PHILA-
DELPHIA COUNTY.

Argued January 25, 1888—Decided February 13, 1888.

1. The city councils of Philadelphia, having power under the act June 8, 1881, P. L. 68, and previous legislation, to enact the ordinance of March 31, 1884, authorizing the revision of the city plans so as to make Chestnut street of the width of sixty feet, and enforcing the recession of building lines in conformity, when a property owner rebuilds with such recession the Court of Quarter Sessions has jurisdiction to authorize and confirm an assessment of damages by a jury of view, as for an appropriation of private property for a public use.
2. Philadelphia v. Linnard, 97 Pa. 242, followed.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 66 January Term 1888, Sup. Ct.; court below, No. — December Term 1885, Q. S.

On September 17, 1885, Geo. H. McFadden & Bros. presented their petition setting forth: That they were the owners of contiguous properties, described as on the north side of Chestnut street and east of Second street, in the sixth ward of the city of Philadelphia; that by an ordinance approved March 31, 1884, the city councils ordained:

Section 1. That the Department of Surveys be and is hereby authorized to revise the city plans, so as to make Chestnut street from the Delaware river to the Schuylkill river of the

width of sixty feet, widening equally on both sides from the old center line.

Section 2. After the confirmation and establishment of said lines, it shall not be lawful for any owner or builder to erect any new building, or to rebuild or alter the front of any building now erected, without making it recede so as to conform to the lines established for a width of sixty feet.

That it becoming necessary for your petitioners to rebuild the stores or buildings upon said lots, they were compelled in so doing, in accordance with the terms of the said ordinance, to abandon a strip of ground, fronting on said Chestnut street of the breadth of five feet and extending of that breadth along the front of petitioners' said lots, with the view of increasing the width of said Chestnut street so that it might be of the width of sixty feet, and that said strip or piece of ground has been taken and appropriated by the city of Philadelphia for use as a public street in pursuance of said ordinance.

That your petitioners are greatly injured by reason of the taking of said strip or piece of ground for public purposes, as aforesaid.

They therefore pray your Honorable Court to appoint a jury of view to assess the damages they sustained by reason of the said taking of their ground. And they will ever pray, etc.

A like petition was filed by Emily B. McFadden, owning property in the same locality.

On October 30, 1885, six viewers were appointed to assess damages as prayed for.

On December 7, 1885, on motion of the city of Philadelphia by its solicitors, a rule was granted to show cause why the petitions should not be quashed and the proceedings dismissed : (1) Because they were irregular and void. (2) Because the court was without jurisdiction. (3) Because the land did not appear to have been taken by any competent order to open or widen the street at the points named in the petitions. This rule on March 1, 1886, was quashed, no opinion being filed.[1]

On March 17, 1886, a like petition was presented by James Mifflin, trustee, and J. Sergeant Price, executor and trustee of James L. Mifflin, deceased, owning property in the same locality, which was referred to a jury of view appointed upon the petitions already filed.

After various continuances, on July 11, 1887, the jury of view filed a report awarding damages to Geo. H. McFadden & Bros. for three properties, Nos. 121, 123 and 125 Chestnut, in the sum of $6,000, and to the Mifflin estate for two properties, Nos. 117 and 119 Chestnut, $4,000, and assessed the same as the total amount of damages against the city of Philadelphia. On the filing of the report, certain facts—inter alia that the public plan for the widening of Chestnut street five feet on the north line over the properties between the Delaware river and Twenty-second street, and five feet on the south side of said street, and fixing the plotted width at sixty feet, was duly confirmed by the board of surveyors on March 2, 1885, and that the Mifflin estate and McFadden properties were acquired before that date—were by agreement of council incorporated with the report of the viewers, with the same effect as if found by them. The same day various exceptions were filed by the city of Philadelphia, which on July 2, 1887, were disposed of by the court, BIDDLE, J., by the following opinion and decree:

We hold that whenever the citizen is required to recede from the old building line in erecting his new building, his right to damages accrues. The real question raised by the exceptions, is as to the amount of damages given by the jury. Some of the witnesses endeavored to establish them by taking the annual gross profit which could possibly be made from the storage of goods on four or five floors, five feet wide each, and capitalizing it at the rate of six per cent., thus giving to the owner of the land an annual income forever equivalent to the storage charges which would be received if the building was always filled at remunerative rates. Such a rule is utterly inadmissible, and if there was any evidence that the jury had adopted it, their verdict would at once be set aside. The damages estimated by that rule would be about $17,000 for McFadden's property and $9,500 for the Mifflin property. As the jury, however, awarded $6,000 to McFadden and $4,000 to the Mifflin property, we can scarcely put upon them the reproach of having adopted that standard.

Mr. Chas. F. Gummey estimated the damage to the selling value of the McFadden property at $9,000 and the Mifflin property at $6,000. Mr. Lewis H. Redner estimated the damage respectively at $10,000 and $7,000. Other experts named

Arguments.

lower figures, but after a careful perusal of the testimony, we are not prepared to say that the award of the jury, $6,000 and $4,000, is excessive.

The exceptions are dismissed and the report confirmed.

The city of Philadelphia then took this writ, assigning as error, inter alia, that the court erred :

5. In dismissing the city's sixth exception, which was: Because Geo. H. McFadden & Bros., petitioners, failed to disclose title to the land for the averred taking of which they claim damages, and, in fact, the title is not vested in them.

7. In dismissing the city's thirteenth exception, viz. : Because the petition and proof failed to show an appropriation to public use of the strip of five feet, for the taking of which damages are claimed, and the court is without jurisdiction.

8. In overruling and discharging the motion to quash, filed on behalf of the city, December 7, 1885.[1]

*Mr. Wm. H. Addicks, Assistant City Solicitor* (with him *Mr. Charles F. Warwick, City Solicitor*), for the plaintiff in error :

1. Section 2, of the ordinance of March 31, 1884, is merely declaratory of the law as enacted in § 3, act of December 27, ·1871, P. L. ( 1872 ) 1390. When cities have been laid out upon public plans, the owner has no right to add to the damages the value of buildings constructed over said lines after confirmation but before an order for the taking of the land for the highway : District of Pittsburgh, 2 W. & S. 325. While such a rule amounts to an inconvenience or restriction upon the use of property, the plotting, etc., is not a taking, and the owner must wait until the land is taken by an order to open, before he can petition : District of Pittsburgh, 2 W. & S. 325; Forbes Street, 70 Pa. 125; Sedgeley Avenue, 88 Pa. 509.

2. The jurisdiction of the Quarter Sessions is purely statutory. Under the act of April 21, 1855, P. L. 264, upon an order to open by an ordinance of councils, jurisdiction for assessment of damages is given by § 7 ; and where a street of less width than 20 feet is widened by recession of buildings as required by § 6 of said act, jurisdiction is given. And when the south side of Chestnut is widened by recession of fronts, as required by the special act of April 28, 1870, P. L. 1291,

this has been tacitly accepted as an order of appropriation by the commonwealth, upon the principle of Smedley v. Erwin, 51 Pa. 445 ; Philadelphia v. Linnard, 97 Pa. 242.   Where the grade regulations are changed upon the public plans, jurisdiction may. be entertained in advance of grading: Act of February 24, 1854, § 27, P. L. 37 : Ridge Avenue, 99 Pa. 469 ; Philadelphia v. Wright, 100 Pa. 235 ; Campbell v. Philadelphia, 108 Pa. 300; and under the general road law of 1836, and cognate statutes, the juries.of view may make assessments of damages : Twenty-eighth Street, 102 Pa. 140.

3. However, the ordinance set forth in the petition in this case, does not amount to a taking, but the plotting in advance of such taking, and there is no statute giving jurisdiction. Councils can only order such streets to be opened as are laid out on the city plan, and until the confirmation of the plan no order to open can be made : Act of April 21, 1855, supra ; and then the act requires the taking to be done in a specified manner, that is, after three months notice by the commissioner of highways : Twenty-eighth Street, 102 Pa. 140.

4. Section 27, act of February 2, 1854, P. L. 37; § 7, act of April 21, 1855, P. L. 264; the act of June 6, 1871, P. L. 1353 ; and the act of June 8, 1881, P. L. 68, construed together, would seem to give the city ample power to open, widen, vacate or change the grade of. either plotted or open streets, and to revise the public plans without limitation, in its discretion. But while these large powers have undoubtedly been conferred : Plan 166, 93 Pa. 221 ; Twenty-second St., 102 Pa. 108; yet in the exercise of such powers, being created by statute, the municipality must follow the statutory rules which regulate the method in which these powers are to be carried into effect; that is:

a. A plotting which, by operation of law, restricts the owner in the use of his property, so that no addition to the public burden of damages for opening streets can be made by the erection of valuable improvements over the street lines, under the penalty of removal at the expense of the owner when the street is ordered open.

b. An opening at such time as the councils may deem the public exigency demands it, by an ordinance and three months' notice to property owners, etc., as expressly required by the

acts granting to the municipality the powers of eminent domain.

c. The payment of any damages assessed for taking, injury or destruction of private property by reason of such opening.

Until the councils, in the manner provided by law, or the court, under its statutory powers, have made an order for the taking of property, and directed the opening of the street, the owner must use his land as best he can, retaining possession of the same subject to the inconvenience of a plotting in advance of an opening. While plotting in advance of opening may result in inconvenience to some few, in the vast majority of cases it is a.great advantage, enabling the owners to anticipate the public improvements and improve their property advantageously in conformity therewith.

*Mr. John G. Johnson* and *Mr. J. Sergeant Price*, for defendants in error:

The whole law upon the question, whether the enforced recession and abandonment of the strip five feet wide is a taking for public purposes, has been well settled by this court in Philadelphia v. Linnard, 97 Pa. 242.

OPINION, MR. JUSTICE PAXSON:

Several of the assignments of error are to questions of fact which we have no means of correcting, even if erroneous. A writ of certiorari, as we have said at least an hundred times, brings up nothing but the record, and we can correct such errors only as are apparent upon its face. Thus we have no means of knowing whether the parties to whom damages have been awarded are the owners of the properties in question, beyond the finding of the jury. The city solicitor will doubtless see that the damages are paid only to parties who are legally entitled to them.

The seventh and eighth assignments raise the only questions which need discussion. They are substantially that the record fails to show an appropriation to the public use of the strip of five feet of ground; and secondly, that the court below had no jurisdiction to entertain this proceeding and confirm the report of the viewers. Either of these objections, if well founded, would be fatal to this proceeding.

The defendants are owners of property on the north side of Chestnut street, below Second street, and being about to tear down and rebuild the same, they were obliged to recede five feet from the old line of the street by virtue of an ordinance of the city councils approved March 31, 1884, widening Chestnut street from the Delaware to the Schuylkill to the width of sixty feet; widening equally on both sides from the old centre line. The second section of said ordinance provides that, "After the confirmation and establishment of said lines, it shall not be lawful for any owner or builder to erect any new building or to rebuild or alter the front of any building now erected, without making it recede so as to conform to the lines established for a width of sixty feet."

This action of city councils was authorized by the act of June 8, 1881, P. L. 68, and previous legislation; so much was conceded by the learned counsel for the city, but they contended that inasmuch as this is a statutory proceeding, the municipality must follow the statutory rules which regulate the method in which these powers are to be carried into effect.

It will be observed that the plotting of the street upon the city plan so as to conform to the new line interferes with no one in the use and enjoyment of his property until he comes to rebuild. This may be in a year or it may be in one hundred years. When the property owner does so rebuild, he must recede five feet. It is then that he is injured, if injured at all, and it is then that his land is taken for public use and he is entitled to have a jury to assess the damages. It would be a disastrous event were we to hold that councils must proceed to widen the entire street at once by an ordinance giving three months' notice to property owners to recede. Such a proceeding would take buildings as well as land, and would cost many millions of dollars, if it did not bankrupt the treasury. The city is proceeding cautiously and in the only practical way by which such a street can be widened. The process will probably occupy nearly a hundred years. It is done gradually, and in a way to produce no great strain upon the city treasury. Few of those now living will derive much benefit from it; the advantages will be reaped principally by another generation.

The act of April 28, 1870, P. L. 1291, had already provided

for the widening of Chestnut street by taking off five feet on the southern line thereof: " Provided, That this act shall not interfere with any buildings now erected on the south side of Chestnut street." In the City v. Linnard, 97 Pa. 242, the defendant, being about to erect a new building on the south side of the street, petitioned for a jury to assess the damages which she sustained by reason of being compelled to recede. It was claimed that she was not entitled to any damages, because the injury of which she complained was due entirely to her own action. This court held otherwise, saying: " By force of law the instant the old buildings were torn down, the city took part of the land for public use and is liable to make compensation to the owner the same as if it had been taken in any other mode."

This is a sufficient answer to the proposition that there was no appropriation of the property to the public use.

The proceedings are affirmed.