## Sansom Street.   Caplan's Appeal.

*Road law—Widening of street—Damages—When damages accrue —Constructive taking—Municipalities.*

1. Where a city passes an ordinance revising the lines of a street, and forbidding the erection of buildings without recession to the new line, an owner, whose property is so affected that it is impossible for him to build on the remnant of his lot after the lines defined by the revision have been confirmed by the proper municipal authorities, is entitled to have his damages assessed immediately from the date of the ordinance, or upon the refusal of the authorities to approve a plan of building not conforming to the new lines.

2. In such case, there can be no application of the rule that the mere plotting of a street upon a city plan without anything more, does not constitute a taking in the constitutional sense, so as to give an abutting owner the immediate right to have his damages assessed.

3. The governing principle is that there need not be an actual physical taking, but that any destruction, restriction or interruption of the necessary and common use and enjoyment of property in a lawful manner may constitute a taking for which compensation must be made to the owner of the property.

Argued May 8, 1928.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 177, Jan. T., 1928, by Joseph Caplan, owner, from order of Q. S. Phila. Co., dismissing petition for appointment of viewers, in the matter of the widening of Sansom Street at the southwest corner of Fifteenth Street, in the Eighth Ward of the City of Philadelphia. Reversed.

Petition for appointment of viewers.   Before MARTIN, P. J.

The opinion of the Supreme Court states the facts.
Petition dismissed.   Joseph Caplan, owner, appealed.

*Error assigned* was order, quoting record.

*Stanley Folz,* of *Sundheim, Folz & Sundheim,* for appellant.—Under the peculiar facts of this case, appellant suffered an injury entitling him to compensation under the Constitution as construed by the Supreme Court: New Brighton v. Church, 96 Pa. 331; O'Brien v. Phila., 150 Pa. 589; Walnut Street Bridge, 191 Pa. 153; Phila. v. Com., 284 Pa. 225; Ice & Coal Co. v. Phila., 156 Pa. 54; Mellor v. Phila., 160 Pa. 614; Ladd v. Phila., 171 Pa. 485; Fyfe v. Boro., 22 Pa. Superior Ct. 292; Chelten Trust Co. v. Blankenburg, 241 Pa. 394; Phila. Parkway Case, 250 Pa. 257.

*John Mundell Hutchinson,* Assistant City Solicitor, with him *Augustus Trask Ashton,* City Solicitor, for appellee.—The alleged right of an owner of land lying within the bed of a plotted street, to recover compensation for damages prior to the actual taking has been denied so repeatedly by this court, that it can no longer be regarded as an open question: Plan 166, 143 Pa. 414, 423; Grugan v. Phila., 158 Pa. 337; Bush v. McKeesport, 166 Pa. 57; South Twelfth Street, 217 Pa. 362; Harrison's Est., 250 Pa. 129; Phila. Parkway, 250 Pa. 257; Chestnut St., 118 Pa. 593; Brower v. Phila., 142 Pa. 350; Hermann v. R. R., 270 Pa. 551.

OPINION BY MR. JUSTICE SCHAFFER, June 30, 1928:

Appellant presented his petition for the appointment of viewers to assess damages done to his property at the southwest corner of Fifteenth and Sansom Streets, Philadelphia.   The court below dismissed the petition. The building, formerly a dwelling, now used for business

purposes, occupies the entire lot fronting sixteen feet on Fifteenth Street and extending along Sansom Street for a depth of sixty-four feet. Six inches are appropriated for party wall purposes by the adjoining owner on Fifteenth Street to the south, leaving available for building frontage only fifteen and a half feet.

On July 7, 1926, an ordinance was adopted by the city providing for the revision of the lines of Sansom Street from Broad Street to Twenty-Second Street by adding to its width thirteen feet on the south side. The ordinance provides that, after the confirmation of the new line on the city plan, it shall not be lawful to erect a new building or rebuild or alter an existing one on the south side of the street without receding to the new line, so far as the first floor is concerned, although it may be arcaded above a height sixteen feet from the pavement. The new line was duly confirmed by the proper municipal authorities.

Appellant's property is assessed for taxation at $180,000. Its carrying charges in excess of revenues subject him to a very substantial annual loss. In the petition it is averred that in order to make the property income-producing, appellant employed an architect to design, and a builder to construct, a six-story building covering the entire lot, and made application to the bureau of building inspection for a permit to erect, which was refused on the ground that the proposed structure did not conform to the widening ordinance, as the first floor did not recede thirteen feet from the old building line. It also sets forth that it is impossible to construct a building, even though the first floor be arcaded, on what would be left of the lot, as there would be only two feet six inches of available space, on which small area it would be impossible, under the prevailing building regulations, to erect even the necessary walls and stairs to afford access to the upper floors. This is not denied by the city.

Being refused the right to erect the building, appellant began this proceeding to have viewers appointed to

assess his damages. The court's refusal to make the appointment was based on the view that, as the city admittedly has not yet passed an ordinance for the widening of Sansom Street or the taking of petitioner's property and as the time for the assessment of damages accrues only when the ordinance to open, take, or increase width is formally passed, the application was premature. It was determined that what had been done amounted to no more in effect than the plotting of the new street line, and, that the mere change of a street line on the city plan, without anything further, does not constitute a taking in the constitutional sense so as to give an abutting owner the right to have damages assessed, that such plotting under the authorities is only the expression of an intention to take the land when occasion arises. The court relied for its conclusion upon such cases as Forbes Street, 70 Pa. 125; Whitaker v. Phœnixville Boro., 141 Pa. 327; Plan 166, 143 Pa. 414; Bush v. McKeesport, 166 Pa. 57; South Twelfth Street, 217 Pa. 362, and Philadelphia Parkway, 250 Pa. 257, and held that the petitioner, by submitting plans not conforming to the requirements of the ordinance, had not brought himself within the exceptions to the general rule as laid down in the Philadelphia Parkway Case and in Volkmar Street, 124 Pa. 320; Whitaker v. Phœnixville Boro., 141 Pa. 327, and the Chestnut Street and other receding building lines cases such as Phila. v. Linnard, 97 Pa. 242; Chestnut Street, 118 Pa. 593, that there could be no assessment of damages until the owner's actual recession was accomplished.

The case before us differs on its facts and in the situation created by the adoption of the ordinance from any of those heretofore passed on. If the ordinance had provided for a sixteen feet widening of Sansom Street, so that the whole of appellant's property would be included within the street lines and he could make no future use of it by either building anew or remodeling, we hazard the thought that it would not be contended by

the city that he was not entitled to have his damages assessed upon the passage of the ordinance, or, at least upon proof that his further use of the building must be at a loss.  That, in point of fact, is the situation with which we are dealing; it is much the same as though the entire property were included within the street lines, because the owner can make no use whatever of the small strip two and a half feet wide which remains outside the highway's limits.  In the Chestnut Street widening cases, we held that damages could be claimed when the actual recession took place, but here the landowner cannot recede for any practical purpose and the law would not requite him to do such a vain and useless thing as to tear down the existing building and to erect one which could not be used.  The Philadelphia Parkway Case, 250 Pa. 257, points the way in principle to the decision of the pending controversy.  It was stated in the opinion that, following the passage of the ordinance to place the parkway upon the city plan, the proper municipal department had directed its plotting, which was done, since which time the city by condemnation or purchase had acquired title to various properties within the lines of the confirmed plan and had expended a large sum in paying for them and was committed to the improvement, which, the opinion goes on to say, "it intends to complete at its own convenience, without regard to the equitable or legal rights of abutting owners whose properties lie within the lines of the parkway or adjacent thereto." The city asserts the right to thus proceed on the theory that until councils pass an ordinance to open the boulevard, a property owner, no matter what injury he may have sustained, does not have the right to have his damages assessed; and this upon the ground that such action is necessary to constitute a taking of property for public use.  This is the general rule, but let us see whether it applies to the present case.  Here some properties have already been taken by condemnation; some have been acquired by purchase; some buildings have

been torn down; some work has been done on parts of the parkway; some improvements intended to add beauty have been constructed; and, in short, many of the necessary steps have been taken looking to the completion of a boulevard in keeping with the progressive spirit of a metropolitan city. These things have been done at intervals during the past ten or twelve years while the great majority of the property owners waited for the city to do something to relieve them from the hardships of the situation in which they were placed through no act or fault of their own. In this situation appellant undertook to get relief and presented its petition in the court below asking for the appointment of viewers to assess its damages. The city moved to quash on the ground that until an ordinance to open was passed (and there was none in this case) there was no taking within the meaning of the law; and, if nothing was done to constitute a taking of or injury to property of appellant in the constitutional sense, it was premature to ask for the appointment of viewers to assess damages." It was recognized in the decision that there is a long line of cases which could be pointed to as sustaining the city's position that the time was not ripe for the appointment of viewers, for in them it was determined that the mere plotting of a street upon the city plan, without more, does not constitute a taking in the constitutional sense, so as to give an abutting owner the right to have damages assessed, but it was said (p. 261): "As applied to the plotting of streets through unimproved land, or as to projected streets in sparsely settled urban communities, the principle is sound......As to ordinary cases relating to laying out, opening, widening, extending and grading streets, lanes and alleys, the settled rule relied on by the city as to the time of the taking......still remains in full force and effect." It was pointed out, however, that "The construction of the parkway is not an ordinary or usual undertaking on the part of the city; it is unusual and

extraordinary;" and so it may be said, in the case at bar, that, so far as appellant's property is concerned, the situation is extraordinary. If he could make use of what would be left of his property, then the rule of the Chestnut Street widening cases would apply and he could not claim damages until he has actually receded, but he is denied the use of it and put in the position, if he may not have relief in the pending proceeding, of suffering continuing losses which cannot in the future be taken into account in any proceeding which he might bring. In Chelten Trust Co. v. Blankenburg, 241 Pa. 394, where the land was taken for park purposes, it was said (p. 396) : "Appellee's land was practically taken and appropriated by the City of Philadelphia the day the ordinance selecting it for park purposes was approved, and such appropriation of it to public use will continue as long as the ordinance is unrepealed....... Though the appellee may remain in possession of the land until the damages for its taking have been paid or secured, 'such occupation can be but permissive, at all times subject to the paramount rights of the public. The land cannot be built upon or improved, except at the hazard of the improver, and it is worthless for sale.'......This being the situation, appellee's absolute right is to have paid or secured to it the damages which are now due it." In the pending matter, the situation is even more extreme than it was in that case, because here the land cannot be built upon or improved at all. The Constitution, article 16, section 8, provides, "Municipal and other corporations......invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements." Under the exceptional circumstances here existing the conclusion can justly and properly be reached that appellant's property has at this time and in the constitutional sense been taken and injured by the enlargement of the city's high-

way and the court below was in error in dismissing the petition. The governing principle is accurately stated in 20 Corpus Juris, 566, "There need not be an actual, physical taking, but any destruction, restriction or interruption of the common and necessary use and enjoyment of property in a lawful manner may constitute a taking for which compensation must be made to the owner of the property."

We reiterate what was said in the Parkway Case and in Hermann v. North Penna. R. R. Co., 270 Pa. 551, as to the maintenance of the rule, under ordinary conditions, of nonliability of the city for damages for the mere plotting of streets.

The order of the court below dismissing the petition is reversed and the petition is reinstated, with directions to appoint viewers as prayed for, costs to be paid by the City of Philadelphia.