McCrady Case.

Argued March 21, 1960. Before JONES, C. J., MUS-
MANNO, JONES, COHEN, BOK and EAGEN, JJ.

*David E. Abrahamsen,* Deputy Attorney General,
with him *Frank E. Roda,* Assistant Attorney General,

and *Anne X. Alpern*, Attorney General, for Commonwealth, appellant.

*John B. Nicklas, Jr.*, with him *Frederick F. Jones*, and *Gifford, Graham, MacDonald & Illig*, and *McCrady, & Nicklas*, for appellee.

Opinion by Mr. Justice Benjamin R. Jones, May 4, 1960:

Roland A. McCrady, the appellee, has been for many years the owner of a 190 acre farm located in Springfield Township, Erie County. The northwest corner of that farm, triangular in shape, is bounded on the north by U. S. Highway Route No. 20, on the south by Pennsylvania Highway Route No. 5 and on the east by appellee's land.

Within this triangle—consisting of approximately 2¼ acres—appellee in 1931 erected a gasoline service station and a restaurant together with a parking area. Under its power of eminent domain and for the purpose of straightening Route No. 5, the Commonwealth in 1935 effected a taking of approximately fifteen feet along the southerly boundary of appellee's triangular tract of land including a portion thereof upon which gas pumps were located. After appellee learned of this taking he presented no claim for any damages and continued to operate, without any interference, the gas pumps on the land taken by the Commonwealth. In 1951 the appellee tore down the old and erected a new gasoline station and at the same time enlarged and remodeled the restaurant building.

On April 30, 1957, the Governor and the Secretary of Highways approved a plan for further highway construction in the area on and adjacent to appellee's triangular plot and this plan was filed in the office of

the Department of Highways.[1]  This triangular plot had a southerly boundary approximately 600 feet long and a northerly boundary approximately 250 feet long. This plan of the Commonwealth *condemned* strips of land along both the southern and the northern boundaries of this triangular plot; it projected a channel change on the southern boundary, approximately 30 feet in length, part of which would be constructed on appellee's land; on land owned by the Commonwealth it established three traffic islands and a highway divider and a curbing, the latter ranging in height from 6″ to 12″ on the inside and from 10″ to 12″ on the outside, which completely surrounded the triangular plot and created thereof an "island"; five access ways, thirty-six feet in width, were provided as means of ingress and egress to the gasoline station, the restaurant and the parking area.

The Department of Highways, acting through its chief area engineer, refused to change, upon appellee's request, either the width or the location of the access ways.  These access ways were located in such position that ingress and egress to and from the gasoline station, the restaurant and parking area were rendered exceedingly difficult and, in some instances, impossible.  The narrow width of the access ways prevented the entry of large trucks and truck-trailers—representative of a considerable volume of the business of the gasoline station—unless such trucks or truck-trailers first turned to the left into the most southerly land of the westbound two lane Route No. 5 or drove over the the almost insurmountable curbing.  Socony Mobile Oil Company, appellee's lessee of the gasoline station,

---

[1] The taking by the Commonwealth occurs when the plans are approved by the Governor and the Secretary of Highways and filed of record in the office of the Department of Highways: *Lakewood Memorial Gardens Appeal*, 381 Pa. 46, 53, 54, 112 A. 2d 135.

notified appellee it would have to surrender its lease because of the fact that the construction of the curbing and access ways made unprofitable the operation of the gasoline station. Upon completion of the work of construction of the curbing on July 1, 1957, appellee was forced to close both his gasoline station and the restaurant.

In an attempt to ensure the future operation of his commercial enterprises within the triangle, appellee was forced to relocate both the buildings and parking area. The gasoline station was torn down and a new gasoline station located at another spot within the triangle. Because of the juxtaposition of the gasoline station and the restaurant the latter had to be completely changed and a new entrance thereto constructed. The parking lot had to be relocated, and this relocation required the placement of pipes to carry off the water of a creek in the rear of the restaurant, the deposit of considerable fill over the area and blacktopping of the entire area in order to render it suitable for the parking of automobiles of customers of the restaurant and the gasoline station.

An examination of the instant record indicates that *the Commonwealth's plan adopted on April 30, 1957 completely insulated and isolated appellee's triangular strip of land in so far as commercial enterprises conducted thereon were concerned.* Appellee was faced with the alternatives of either ceasing any commercial operations on the premises or of relocating the buildings in which such operations took place to fit in with the new construction, particularly the location of the new access ways and curbing.

The matter came before a board of viewers and, on appeal therefrom, before the Court of Common Pleas of Erie County. After a hearing, a jury awarded appellee $27,500 which consisted of damages of $25,-

000 and detention money of \$2500.[2]   From the judgment entered on this verdict the Commonwealth has taken this appeal.

The Commonwealth thus poses the issue: should not the effect on a landowner's business of the installation of curbing along his highway frontage be excluded as an element of damage in an eminent domain proceeding where there has been no total deprivation of access?

In the determination of this issue certain well-established principles of law must be kept in mind. *First,* as stated by Mr. Justice (now Chief Justice) JONES in *Koontz v. Commonwealth,* 364 Pa. 145, 147, 70 A. 2d 308: "It is, of course, not open to dispute that, before the Commonwealth can be made to answer, in the present state of the statute law (Sec. 304 of the State Highway Law of June 1, 1945, P. L. 1242), for damages in cases of highway improvement, there must have been a taking of the complaining property owner's land (Brewer v. Commonwealth, 345 Pa. 144, 145, 27 A. 2d 53); that such taking depends upon the condemnation which, in turn, is effected by the Governor's approval of the official plan for the highway involved (Sec. 210 of the State Highway Act of 1945, supra, and Lubrecht v. Commonwealth, 350 Pa. 47, 51-52, 38 A. 2d 242); that the extent of the condemnation must be ascertained from the plan approved by the Governor for the purpose (Burkholder v. Commonwealth, 347 Pa. 478, 480, 32 A. 2d 745); . . . ." See also: *Fritchey v. Commonwealth,* 331 Pa. 179, 200 A. 622; *Heil v. Allegheny County,* 330 Pa. 449, 199 A. 341; *Puloka v. Commonwealth,* 323 Pa. 36, 185 A. 801; *Soldiers and*

---

[2] Appellee's two expert witnesses testified that the difference in value of appellee's land, under the "before and after" rule, amounted to \$32,000, while the Commonwealth's witness testified that such difference was \$20,800.

*Sailors Memorial Bridge,* 308 Pa. 487, 162 A. 309. *Second,* in the absence of any statutory provision providing therefore, the Commonwealth is not liable for consequential damages[3] incurred in the construction of highways: *Brewer et ux. v. Commonwealth,* 345 Pa. 144, 145, 27 A. 2d 53; *Heil v. Allegheny County,* supra; *Penna. Co., etc., Trustee v. Philadelphia,* 351 Pa. 214, 217, 40 A. 2d 461; *Hoffer v. Reading Co.,* 287 Pa. 120, 124, 127, 128, 134 A. 415; *Moyer et ux. v. Commonwealth,* 183 Pa. Superior Ct. 333, 336, 337, 132 A. 2d 902. *Third,* unlike municipal and other corporations having the power of eminent domain, the Commonwealth is not within the provisions of Article 16, §8 of the Pennsylvania Constitution. As Mr. Justice (later Chief Justice) STERN stated in *Heil v. Allegheny County,* supra (pp. 452, 453) : "While, under Article I, section 10, of the Constitution the Commonwealth may not *take* private property without making just compensation, it does not come within the mandate of Article XVI, section 8, which provides that municipal and other corporations and individuals, in their exercise of the power of eminent domain, must make just compensation for property taken, *injured* or destroyed, —a provision which fastens upon them liability for consequential damages. To support a recovery of damages from the Commonwealth in cases where property is not actually taken by it, there must be an act of the legislature expressly imposing such liability: [citing cases]." See also: *Ewalt v. Pennsylvania Turnpike Commission,* 382 Pa. 529, 534, 115 A. 2d 729. *Fourth,* if the Commonwealth, *by virtue of its police power,* re-

---

[3] "Consequential damages" as defined by Mr. Justice (later Chief Justice) KEPHART in *Soldiers and Sailors Memorial Bridge,* 308 Pa. 487, 490, 162 A. 309, are those which "arise when property is not actually taken or entered but an injury to it occurs as the natural result of an act lawfully done by another."

stricts or limits the use of a property no compensation for such diminution of use is payable. In *White's Appeal,* 287 Pa. 259, 264, 134 A. 409, we stated: "Police power should not be confused with that of eminent domain. Police power controls the use of property by the owner, for the public good, its use otherwise being harmful, while eminent domain . . . take[s] property for public use. Under eminent domain, compensation is given for property taken, injured or destroyed, while under the police power no payment is made for a diminution in use, even though it amounts to an actual taking or destruction of property." See also: *Maurer et al. v. Boardman et al.,* 336 Pa. 17, 7 A. 2d 466; *Jackman v. Rosenbaum Co.,* 263 Pa. 158, 168, 169, 170, 106 A. 238.

The Commonwealth denies liability for appellee's damages on two grounds: (1) that, in the exercise of its police power, it provided for the curbing and access ways and, for any diminution of use therefrom of appellee's property, it is not liable in damages; (2) that, even if it be considered that it was exercising its power of eminent domain, appellee's damages were consequential in nature and noncompensable.

Section 420 of the Act of June 1, 1945, P. L. 1242, Art. IV, 36 PS §670-420, upon which the Commonwealth relies, provides: "The secretary [of Highways] is empowered to make reasonable rules and regulations governing the use of all state highways, and, by the construction of curbs, divisor strips, painted lines or signs, may control the direction of the flow of traffic thereon . . . ." It is the Commonwealth's contention that, by virtue of this statutory provision, the instant curbing and access ways were constructed and for any damages flowing therefrom it is not liable. Under the Commonwealth's theory this new construction of the highway is considered as two separate transactions;

the placement of the curbing as an exercise of the police power and the taking of appellee's land as an exercise of its right of eminent domain. Such position directly contradicts the factual situation. The curbing and the taking of the land of the appellee were all one transaction. While the curbing was constructed upon land taken by the Commonwealth from appellee in 1935 appellee's land taken by the Commonwealth on April 30, 1957 was necessary and essential if the purposes of the Commonwealth were to be realized. What the Commonwealth attempts to do is clear and evident: under the guise of the police power it seeks to accomplish indirectly that which it cannot accomplish directly. If the curbing was to be constructed the Commonwealth had to take a certain portion of appellee's land for slope purposes and the latter it acquired under its power of eminent domain. The *curbing* could not have taken place without the *taking* of a portion of appellee's land for slope purposes and the *taking* would have been meaningless without the *curbing*. Under the unique and extraordinary situation herein presented the *taking* and the *curbing* were both part and parcel of *one* transaction. The Commonwealth's attempt to justify the curbing as an exercise of its police power and the taking as an exercise of its power of eminent domain in an attempt to escape liability for the damages which appellee so obviously suffered cannot be condoned. The language of Mr. Justice HOLMES in *Pennsylvania Coal Co. v. Mahon,* 260 U. S. 393, 415, 43 S. Ct. 158 is particularly appropriate: "The protection of private property in the Fifth Amendment presupposes that it is wanted for public use, but provides that it shall not be taken for such use without compensation. A similar assumption is made in the decisions upon the Fourtenth Amendment. Hairston v. Danville & Western Ry. Co., 208 U. S. 598, 605.

When this seemingly absolute protection is found to be qualified by the police power, the natural tendency of human nature is to extend the qualification more and more until at last private property disappears. But that cannot be accomplished in this way under the Constitution of the United States." *F-K Market House Co. v. Reading,* 310 Pa. 493, 165 A. 398, relied upon by the Commonwealth, was clearly a valid exercise of the police power and not of the power of eminent domain and is presently inapposite.

Inferentially at least, the Commonwealth concedes that it could not, even under its police power, totally deprive appellee of access rights to his property although it does contend that it could regulate and limit such rights. By the construction of this curbing at heights varying from 6″ to 12″ the Commonwealth sealed off and isolated this triangular portion of appellee's land and, for all practicable purposes, doomed the commercial enterprises conducted thereon unless appellee relocated the building structures. While the Commonwealth did provide five access ways yet such ways were of such width and so located as to effect a practical denial of any access to the property for the purposes for which it was employed. The court below in its opinion stated in this connection: "To rehabilitate the property for use as a gasoline station, appellee made many changes. With a new building and by rearranging a restaurant building also on the property, he was able to make it possible for the lessee to resume business. It is appellee's contention, with which we agree, that the taking of the narrow strip of land around most of appellee's property in 1957 and the erection of curbing which rendered useless the gasoline station, caused damage for which appellee is entitled to compensation. The appellant contends that inasmuch as it erected the curbing on its own

property and left openings from the highway at places which could, even though inconveniently, be used, no right to damages exists other than for possibly the small amount of property actually taken. If the Commonwealth is correct in this legal position, we then can exaggerate the situation somewhat in order to point out the injustice which results from such a rule of law. Assume a hotel building of many stories is laid out by architects, and constructed with an attractive front and first floor arrangement commonly provided for the convenience of patrons. This hotel also has a small entrance at the rear principally used by employees and by those bringing supplies but, nevertheless, through such entrance, and possibly through storage rooms and furnace rooms, the customer can reach the lobby where reservations may be made and access to elevators may be had. Then assume that the Commonwealth erects a ten foot wall on the adjoining street and takes a strip of land around and from the hotel property for some auxiliary use and leaves a ten foot entrance at the rear of said hotel. Could we under such circumstances conclude that the hotel owner was without remedy even though his million dollar investment became useless? We think not."

Appellee relies on decisions, in certain *extraordinary* situations, wherein it has been held that "there need not be an actual, physical taking, but that any destruction, restriction or interruption of the common and necessary use and enjoyment of property in a lawful manner may constitute a taking for which compensation must be made to the owner of the property": *Sansom Street, Caplan Appeal*, 293 Pa. 483, 143 A. 134; *Philadelphia Appeal*, 364 Pa. 71, 75, 70 A. 2d 847; *Miller v. Beaver Falls*, 368 Pa. 189, 82 A. 2d 34; *Troup et ux. v. North Bethlehem Borough*, 122 Pa. Superior Ct. 198, 186 A. 306. These cases are not presently ap-

posite for they involved municipal corporations, rather than the Commonwealth, which are required under Article 16, §8 of the Constitution of Pennsylvania to make just compensation for property taken, *injured* or *destroyed* by the construction or enlargement of their works, highways or improvements, and all, with the exception of *Philadelphia Appeal,* supra, involved no actual taking of land.

In the instant factual situation the Commonwealth actually took a portion, albeit comparatively small, of appellee's land as part of its general plan of highway construction in the area of the triangle. Uniquely, the taking of this portion of appellee's land was so vital to the eventual curbing around the triangle that the one could not have been accomplished without the other and the damages which resulted were direct and not consequential. As a direct—not a consequential—result of the taking of this land as part of the general plan of the Commonwealth the construction which followed effectively denied to the appellee and his business invitees access to the land and resulted in a cessation of appellee's commercial activities. The deprivation of such use of the land for the purpose it was being employed required on appellee's part a rearrangement and relocation of his commercial enterprises all at his loss and expense.

In arriving at the difference between the fair market value of this land before and after the taking the trial court properly permitted the jury to consider as elements of damage the effect of the curbing and the unsuitably located access ways on free and unlimited access to appellee's property. In *Breinig et ux. v. Allegheny County et al.,* 332 Pa. 474, 480, 2 A. 2d 842, we said: "Where land is taken . . . for highways, the abutting owner retains, as an incident to ownership of the remainder of his land, the right of access, or of

ingress and egress. This right cannot be taken from him unless compensation is made therefor under the law. It is a property right, protected by the Constitution." In *Puloka v. Commonwealth,* 323 Pa. 36, 185 A. 801, the Commonwealth took 1.79 acres of a 12 acre farm for the construction of a highway. When constructed the highway divided the farm into two parts, the barn being on one side of the highway and the house and outbuildings on the other. This Court held that elements of damage such as the separation of the buildings by the highway, interference with access and additional costs of fencing were not consequential damages but were elements directly bearing on the market value of the land before and after the date of the condemnation.

In *Westinghouse Air Brake Co. v. Pittsburgh,* 316 Pa. 372, 375, 176 A. 13, this Court stated: "In condemnation cases to ascertain the damages accruing to an owner from the appropriation of his land or the consequential injury that may follow such appropriation, the usual and ordinary standard is the difference in the market value before and after taking. Estimates as to the costs of rebuilding specific items of property or injury to particular uses affected by the taking, are not recoverable or admissible as distinct items of damage, but such losses may become useful as elements bearing on the market value before and after the appropriation." That rule was properly followed by the court below under the unusual circumstances therein presented. As surely as night follows day, the injury to, and the deprivation of, the use of appellee's property followed the taking by the Commonwealth of the strips of land on the northern and southern boundaries of this triangle. Equity, justice and an adherence to principles long recognized by this Court in eminent domain proceedings require that this verdict be upheld.

Judgment affirmed. Costs on the Commonwealth.

DISSENTING OPINION BY MR. JUSTICE COHEN:

I cannot conclude that the small taking here affected the ingress to or egress from plaintiff's land. On the contrary, the testimony clearly shows that the taking was in no way related to the installation of the curbing. Since there was no taking, the rule established in *F-K Market House Co., Inc. v. Reading,* 310 Pa. 493, 165 Atl. 398 (1933) applies. I would reverse and grant a new trial: *Johnson's Petition,* 344 Pa. 5, 23 A. 2d 880 (1942).