The Fidelity Insurance, Trust & Safe Deposit Company of Philadelphia and John Howard Gibson, Trustees under the last Will of Henry C. Gibson, deceased, Appellants, *v.* Samuel M. Fridenberg, Solomon R. Fridenberg, and M. Samuel Fridenberg, trading as S. M. & S. R. Fridenberg & Co.; Samuel M. Fridenberg, Solomon R. Fridenberg, and Isaac S. Isaacs, Trustees under the Will of Louis E Fridenberg, deceased; Edward F. Greathead and William C. Squibb, trading as Godfrey & Co.; Harry V. Varwig and George C. Varwig, trading as H. Varwig & Brother.

*Deed—Condition—Building restriction—Fire escape.*

The right of the sovereign power to direct that which is for the welfare of the general public cannot be abridged by contract stipulations between individuals; nor can a party to a contract be mulcted into a penalty because of obedience to the mandate of the commonwealth.

The erection of a fire escape in compliance with an act of assembly is not a violation of a condition in a deed restraining the construction of an addition to a building beyond a certain height.

*Deed—Condition—Forfeiture.*

No court, either of equity or law, will declare an estate forfeited unless compelled to do so by rigid and unbending rules; and certainly, never, where the complaining party has a remedy in an action for damages, and has stood by for years without asserting by action his intention to insist on a forfeiture.

In 1825 a lot in the city of Philadelphia was conveyed, conditioned that all of the buildings thereon erected should be torn down within a year, and that thereafter no building or structure should be erected on said lot exceeding nine feet in height, except a building on the front of the lot not exceeding sixty feet in depth. In course of time buildings were erected upon the lot in violation of the condition. In 1881 a bill in equity was filed by the successors of the original grantor to compel the removal of the buildings erected in violation of the condition. It appearing that the buildings had been erected and maintained for more than twenty-one years before the suit in equity was instituted, the court dismissed the bill on the ground that the plaintiff was guilty of gross laches in enforcing his right. In 1893 the plaintiffs brought an ejectment to enforce a forfeiture of the estate because of violation of the condition. *Held*, that plaintiff was not entitled to recover.

Argued April 9, 1896. Appeal, No. 208, Jan. T., 1896, by plaintiffs, from judgment of C. P. No. 4, Phila. Co., June T., 1893, No. 420, on verdict for defendants. Before STERRETT, C. J., GREEN, WILLIAMS, DEAN and FELL, JJ. Affirmed.

Ejectment for a lot of land on the south side of Chestnut street above Ninth in the city of Philadelphia. Before WILL-SON, J.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows :

[It is still claimed, as I understand it, that there was a breach of the condition by reason of the erection of the fire escape on the front end of the building beyond the line mentioned in the deed—that is, beyond the line which fixed the northernmost building line of the property. Without entering into my reasons for doing so, I instruct you that in my opinion the plaintiffs have no cause of action based upon that ground; that it was not a breach of the condition for the defendants to put that property to all legitimate uses of a manufactory, and then if in that case, and because of that fact even, the public authorities instructed them to erect a fire escape, and they did so in obedience to those instructions, I do not consider that that amounted to a breach.] [2]

[It is claimed on the part of the defendants that whatever rights the plaintiffs might have had at some time or another, or some people whose rights were anterior to theirs in point of time, earlier in the line of title, that those rights are now concluded, and that the defendants have a full and complete legal right to maintain whatever there may be there now, which would have possibly constituted a breach of the condition at the time when the alleged breach first existed, because they say that they have stood there for a period of twenty-one years. What I am doubtful about here is whether or not there is any satisfactory evidence as to twenty-one years having run in regard to these different items of alleged breach. It is undoubtedly the duty of the defendants to show to the jury—to convince you—to convince your reason—your judgment—that there have been twenty-one years in regard to all of these alleged breaches, or some of them, before you would be permitted, and before you

ought to draw a conclusion that the plaintiffs had lost whatever right they had in regard to such breaches by virtue of such lapse of time.

There is some testimony in the case which I think the defendants can use upon that point. I do not see that I can say that you cannot consider that testimony. Very likely it is true, as has been argued on the part of the plaintiffs, that that testimony, taken in connection with other testimony, can only reasonably be explained as applicable to something else than the main structure; that is very possible, but still there is testimony which I think I cannot help leaving to you, upon the question as to whether the pigeon house and the building in the rear stood there away back nearly as far as 1860, or shortly after that time. If it were so—if the evidence upon that point satisfies your minds to that extent—the plaintiffs could not recover. If these breaches have been breaches lasting for more than twenty-one years before the suit was brought, that would be an end of the plaintiffs' case. But if that is not so—if your candid judgment be that twenty-one years did not run, and that these structures upon the ground had been put there within twenty-one years—then that question drops out entirely, and should have no weight with you. You should not force it to have weight because you would like to. Now, as I have stated already, if the twenty-one years had run, that is an end of the case.] [3]

[If the defendants found any sort of use of those buildings which stood upon the ground when they or their testator, the brother of these two Fridenbergs, purchased the property—a use other than that which was permitted by the terms of the deed—and there was nothing to indicate that objection had been made to that, then they were clearly entitled to permit a use which was of the same general character, or no worse in its nature and kind, than that which they found in existence at the time—certainly until they had notice, and express notice, given to them that such a use of the property must terminate. I recollect no formal notice—no express notice given by the plaintiffs to the defendants at any time, to cease any such manufacturing. I do not consider, and what I say now applies not only to the question of manufacture, but also to some other branches of the case, that the bill in equity which was filed,

and which you have heard mentioned many times, itself served to operate as a notice to the defendants which terminated any rights that they otherwise had. It was the method which was adopted by the plaintiffs to carry out, to a certain degree at least, what they regarded as their rights, in which effort they failed. In my judgment, that effort which they made does not have any effect here one way or the other; it neither helps nor hurts them.

Passing the question of manufacture, and going to the buildings again, what is the view to be taken on that subject? But I do find this, that those structures remained there—structures which were apparently in violation of the terms of the condition—which were erected in breach of the plaintiffs' rights. I find that they remained there for a long time, and, so far as the evidence appears, without objection being expressed to the defendants. Now the question is, under such a state of affairs can the plaintiffs come in summarily and say, " Although these structures have stood there for a good many years ·without objection on our part, we now treat them as a breach, and you may hand back to us the property, convey it back to us, or it must be given back to us, through process of law?" I do not think the plaintiffs have that right. I think they were bound to demand that anything upon the property which had no business to be there—I mean after a considerable lapse of time— that any building or erection upon the property which was put there in breach of the condition contained in the deed should be removed within a time in which it could reasonably be done before they could enforce a forfeiture of the property and obtain the title to it. It appears that notice was given March 2, 1893, and that suit was brought June 2, 1893. I do not consider this notice a proper notice. I think the plaintiffs were bound to give to the defendants an opportunity to remove the forbidden structures, if there were such structures still existing, before they could enforce a forfeiture under the terms of the deed.] [4]

Verdict and judgment for defendants. Plaintiffs appealed.

*Errors assigned* were (2–4) above instructions, quoting them.

*Geo. L. Crawford*, of *Crawford, Loughlin & Dallas, Harry G. Clay* with him, for appellants.—These restrictions create a

conditional estate in Rockhill and his assigns without a clause for re-entry : Gray v. Blanchard, 1 Sharswood and Budd's Leading Cases in Real Property, 118 and 122–124 ; Bear v. Whisler, 7 W. 149 ; Clark v. Martin, 49 Pa. 289 ; 1 Am. Law Reg. N. S. 491 ; St. Andrew's Church App., 67 Pa. 512 ; Slegel v. Lauer, 148 Pa. 236 ; Muzzarelli v. Hulshizer, 35 W. N. C. 122 ; Kemp v. Sober, 1 Sim. Ch. N. S. 520 ; Clements v. Welles, L. R. 1 Eq. 200 ; Feilden v. Slater, L. R. 7 Eq. 523 ; Linzee v. Mixer, 101 Mass. 512 ; Tobey v. Moore, 130 Mass. 448.

They are by the terms of the grant expressly operative upon Rockhill's assigns, and would from their nature be so without express obligation, and are upon the face and in the line of the title : Clark v. Martin, 49 Pa. 289 ; Whitton v. Whitton, 38 N. H. 127 ; Rowell v. Jewett, 69 Me. 293 ; Barker v. Cobb, 36 N. H. 344 ; Cross v. Carson, 8 Blackf. (Ind.) 138 ; Reed v. Stouffer, 56 Md. 236 ; Univ. Soc. v. Dugan, 65 Md. 460 ; Gray v. Blanchard, 1 Sharswood & Budd's L. C. R. P. 119.

The right to enforce forfeitures for breach of the conditions passed to the plaintiffs : McKissick v. Pickle, 16 Pa. 140 ; Slegel v. Lauer, 148 Pa. 236 ; Hamilton v. Kneeland, 1 Nev. 60.

Laches is no defense as to future prevention if there be no estoppel : Menendez v. Holt, 128 U. S. 514 ; Soc. v. Low, 2 C. E. Green N. J. 20 ;

· The conditions in this case are permanent and continuous. The waiver of one breach and forfeiture therefor is not a waiver of a recurring breach of a continuous condition, or a waiver of the condition or of a conjoined condition : 1 Smith L. C. Am. ed. 1885, 121 ; 1 Sh. L. C. R. P. 147 ; Hamilton v. Kneeland, 1 Nev. 60 ; Becker v. Werner, 98 Pa. 555.

The equity suit was only a suspension, not a waiver, of the right to forfeiture, and not a waiver of the conditions or breaches, and certainly not of the breach in erecting and maintaining the fire escape after the equity suit was brought and its testimony taken : Manice v. Millen, 26 Barb. 42 ; Taylor on L. & T. secs. 498, 500, 501 ; Doe v. Brindley, 4 B. & Ad. 84 ; Doe v. Jones, 5 Exch. 497 ; Few v. Perkins, L. R. 2 Exch. 92–95 ; Alexander v. Hodges, 41 Mich. 691 ; Doe v. Woodbridge, 9 B. & C. 376 ; Stuyvesant v. Mayor, 11 Paige Ch. 414 ; Croft v. Lumley, Ellis, B. & E. 1069 ; Clough v. L. & N. W. R. Co., L. R. 7 Exch. 26–34.

*F. Carroll Brewster*, for appellees.—The covenant in the Burd deed is not such as can be enforced by a forfeiture of the estate: Paschal v. Passmore, 15 Pa. 295; Cook v. Trimble, 9 Watts, 15; Coal Co. v. Early, 162 Pa. 338.

The purpose of the restrictions was to prevent interference with the light and air around the Burd mansion. When his executors tore down his house they destroyed the restrictions, for their sole purpose and object thereby disappeared.

The decree in the equity suit is conclusive against the plaintiff's claim—the case is res adjudicata: Duke of Bedford v. Trustees of British Museum, 2 Mylne & Keene, 552; Peek v. Matthews, L. R. 3 Eq. 517; Trustees v. Thacher, 87 N. Y. 319; Sayers v. Collyer, L. R. 24 Chan. 180; Duncan v. Cent. Pass. Ry. Co., 85 Ky. 525; Page v. Murray, 19 Atl. Rep. 11 (N. J. 1890); 2 Smith's Lead. Cases, 763; Perine v. Dunn, 4 Johns. Chanc. 140; Holmes v. Remsen, 7 Johns. Chanc. 286; Neafie v. Neafie, 7 Johns. Chanc. 1; Lansing v. Russell, 13 Barb. 510; Loudenback v. Collins, 4 Ohio (N. S.), 251; Bldg. Assn. v. Reynolds, 5 Duer, 671; Kelsey v. Murphy, 26 Pa. 78; Black v. Black, 27 Georgia, 40; Hall v. Dodge, 38 N. H. 346; Durant v. Essex Co., 7 Wallace, 107; Marsh v. Pier, 4 Rawle, 273; Whelan v. Hill, 2 Wharton, 119; Lawrence v. Vernon, 3 Sumner, 20; Miller v. Manice, 6 Hill, 114; Birckhead v. Brown, 5 Sandford, 134; Baker v. Rand, 13 Barb. 152; Burke v. Miller, 4 Gray, 114; Shears v. Dusenbury, 13 Gray, 292; Lawrence v. Hunt, 10 Wend. 80; Hamner v. Griffith, 1 Grant, 193; Chamberlain v. Gaillard, 26 Ala. 504; Roberts v. Heim, 27 Ala. 678; Sawyer v. Woodbury, 7 Gray, 499; Jennison v. West Springfield, 13 Gray, 544; Hopkins v. Lee, 6 Wheat. 109; Sibbald v. U. S., 12 Peters, 488; Kelsey v. Murphy, 26 Pa. 78; Parker v. Kane, 22 How. 1; Rockwell v. Langley, 19 Pa. 502; Phila. v. Girard, 45 Pa. 9; Radford v. Folsom, 3 Fed. Rep. 199; Kurtz v. Carr, 5 N. E. Rep. (Ind.) 692; Hasty v. Berry, 1 S. W. (Ky.) 8.

If the appellants have any cause of action whatever it is merely a claim for damages. See opinion, Orne v. Fridenberg, 143 Pa. 500; Paschall v. Passmore, 15 Pa. 306.

OPINION BY MR. JUSTICE DEAN, May 18, 1896:

The land at the southwest corner of 9th and Chestnut streets,

Philadelphia, fronting one hundred and twenty-five feet on Chestnut and extending back two hundred and thirty-five feet to George now Sansom street, on July 27, 1825, was owned in fee by Edward Shippen Burd; on that day, he conveyed twenty-four feet of it on the western side, fronting on Chestnut and running back to Sansom street, to Thomas C. Rockhill, in fee, upon this condition:

" That all the buildings heretofore erected and now standing upon the said lot of ground hereby granted shall within one year from the date hereof be completely prostrated, and that he, the said Thomas C. Rockhill, his heirs or assigns, shall not at any time hereafter erect or build, or permit or suffer to be erected or built, on the above described lot of ground, any buildings whatever other than privies, milk or bathing houses, walls or fences not exceeding nine feet in height from the surface of the curbstones immediately in front of the said lot on Chestnut street, according to the city regulation thereof, excepting a messuage on the Chestnut street front of the said lot not exceeding sixty feet in depth, with a piazza adjoining the same to the south for a staircase only, not exceeding twenty-five feet in depth, and a stable and coach house on the George street front of the said lot, which stable and coach house shall not be of a greater height nor extend in depth further north than the stable and coach house of the said Edward Shippen Burd, built and now standing upon the ground to the eastward thereof. Also upon this further condition, that the north or front wall of any building at any time hereafter to be erected or built upon the said Chestnut street front shall be built precisely on a line east and west with the northern wall of the western wing of the said Edward Shippen Burd house, built and now standing upon the lot of ground on the south side of the said Chestnut street between the said lot of ground and Ninth street; that is to say, at the distance of ten feet one inch and five eighths part of an inch from the south line of the said Chestnut street; also that the ground between the said north wall of the said building so to be erected on Chestnut street and the south line of the said Chestnut street shall be forever left open for a public pavement and footway free from every obstruction or incumbrance whatever, except steps, cellar doors and scrapers."

The grantor continued in the ownership of the remaining part

of the lot until his death in 1848. He left a will, in which he devised this part to his wife for life, with the benefit of all the conditions and restrictions placed by him upon the Rockhill lot, with the right in her to insist upon a full performance of them; and, further, expressly prohibited his executors from ever canceling or releasing them, and devising to the executors the fee in trust for the uses and purposes set out in his will. The lot conveyed to Rockhill is 908 Chestnut street, that immediately adjoining it on the east is 906. The title to the Rockhill lot, by regular conveyances from him and subsequent grantees, is vested in these defendants. That to 906 is in these plaintiffs. The latter, averring a violation of the conditions, brought ejectment against defendants to enforce forfeiture of the conditional estate which passed by the Rockhill deed. On the trial in the court below, the evidence clearly showed a plain disregard of the restrictions as to the buildings on the lot beyond the sixty feet limit from the front on Chestnut street, and also a violation of the conditions as to size and character of buildings on Sansom street front. The defendants alleged, the violation had existed for a period of more than twenty-one years before suit brought, and that at the date they obtained their title, the forbidden structures had been upon the lot for a period of at least seventeen years. It was not disputed, that:

1. The brick building on the rear of 908, fronting on Sansom street, for many years had not been used as a stable and coach house, but had been turned into a brush factory with a frame building attached, and in 1875 this had been turned into a drinking saloon, and then was a building with three floors.

2. That to this building towards Chestnut street had been attached a brick addition.

3. That a pigeon house and other buildings had been put upon the lot between it and the main building upon Chestnut street two feet higher than the nine feet stipulated for in the restriction.

There was some evidence that a bulk window had been constructed on the Chestnut street front, in violation of the restriction, and also that a fire escape had been constructed in front above the first story. As to the bulk window, it was conceded by plaintiffs at trial below, it had been there for more than twenty-one years before suit. Concerning the fire escape, as it

was put there under the police power of the commonwealth and the municipality, we are of opinion, it is not within the power of the contracting individuals to prohibit it; therefore, no forfeiture can be asserted because of it. Rights under a contract are always subject to this modification, whether within the contemplation of the parties or not at the date of the contract. The right of the sovereign power to direct that which is for the welfare of the general public cannot be abridged by contract stipulations between individuals. Nor can a party to a contract be mulcted into a penalty because of obedience to the mandate of the commonwealth.

One of plaintiffs' predecessors in title, J. F. Orne, in 1881, filed a bill in equity to restrain defendants from maintaining the buildings in violation of the restriction, and for an order on them to remove the same. The defendants, by answer, averred, the buildings on the lot were substantially the same as when the property was conveyed to them in 1875, and that at the date of filing the bill they had been in existence for a period of more than twenty-one years. A master was appointed to take testimony, find facts and suggest a decree. He found that prior owners of lot 908 had erected on the lot buildings in violation of the condition, and they had been there for many years before the equity suit was instituted, and, further, were occupied and used for purposes wholly different from those stipulated for. He further concludes that defendants should be restrained, and in accordance with his suggestion the court below decreed an injunction. From this, defendants appealed to this court, and in October, 1891, the decree was reversed and bill dismissed. The case is reported, Orne v. Fridenberg et al., 143 Pa. 487. The opinion is by PAXSON, C. J., and holds, that as plaintiff was guilty of gross laches in enforcing his right, equity would not interpose by a restraining order. Many cases are cited as sustaining this decision, the sum of them being, as quoted by the chief justice from 2 High on Injunctions, 1159, that " in conveyances of real property, the courts require due diligence upon the part of plaintiff seeking the relief, and laches or acquiescence on his part in the violation of the restrictive covenant will ordinarily defeat his application. Indeed, equity requires the utmost diligence in this class of cases upon the part of him who invokes its preventive aid, and a slight degree of acquies-

cence is sufficient to defeat the application, since every relax-
ation which plaintiff permits in allowing the erections to be
made in violation of the covenant, amounts pro tanto to a dis-
affirmance of the obligation."

Although the principle of equity which justifies a chancellor
in refusing an injunction where the purpose of the restriction
has been defeated by changes in the character of the neighbor-
hood and the surrounding improvements is adverted to, the
judgment is based on the first ground; the laches of plaintiff
extinguished his right in equity. The opinion ends with this.
intimation: "While we think, for the reasons given, that the
plaintiff is not entitled to an injunction, he may still sue at law
and recover damages, if he can show he has sustained any."

In June, 1893, more than a year and a half after this decree,
the present plaintiffs brought this ejectment to enforce a for-
feiture of the estate, because of the violations of the conditions
of the grant heretofore noticed. A number of written points.
were presented to the court below, among them the sixth, which
asked, on the facts, which undoubtedly showed a technical vio-
lation of the conditions of the deed, a peremptory direction to
find for plaintiffs, conditioned that the offending structures.
should be removed within three months. The court declined
to give the instruction prayed for, but submitted to the jury to
find from the evidence whether the alleged breaches had con-
tinued for a period of more than twenty-one years before suit.
brought to enforce the forfeiture; if so, then the plaintiffs could
not recover; if their existence was within twenty-one years,
plaintiffs could recover the land by reason of the breach. And
further, if the buildings had been there less than twenty-one
years, yet had stood for any considerable period without objec-
tion by plaintiffs, then defendants were entitled to reasonable
notice to remove them, before an ejectment to enforce forfeiture
could be successfully prosecuted.

The verdict was for defendants, and plaintiffs appeal, assign-
ing eleven errors to the charge and answers to points.

Without taking up and passing upon the assignments of error
in their order, we do not see how, in any view of the undisputed
facts, plaintiffs can now enforce the forfeiture of defendants'
estate in the lot. In the equity proceedings, it was found as a
fact, that many years before 1881, the forbidden structures.

stood upon the lot, and were used for purposes other than those specified and allowed in the condition. Up to that date, no suit had been instituted either to stop their erection or compel their removal. Then it was sought to have them removed by the mandate of a chancellor, who refused to grant it, because the plaintiffs had been guilty of gross laches. Eleven years after the institution of that suit, at the commencement of which the master found the violation had existed for many years, this common law action is commenced to enforce the condition by a forfeiture of the estate. In the equity suit, the prayer was, that the condition be enforced by an order for the removal of the building; if equity would not tolerate such a remedy then, by reason of gross laches, will the law, after eleven years more of neglect, adopt a more drastic one? If ever there was a case to which the maxim, that conditions which defeat an estate are odious, is applicable, it is this one. No court, either of equity or law, will declare an estate forfeited, unless compelled to do so by rigid and unbending rules; and certainly, never, where the complaining party has a remedy in an action for damages, and has, as here, stood by for years without asserting by action his intention to insist on a forfeiture. There was inexcusable delay, and it was judicially so pronounced in the equity suit; the institution of that proceeding was itself, in effect, an admission that the condition could not be enforced by an action at law to retake the land. That suit proceeded on the theory that at that date there was no adequate remedy at law to compel performance of the condition, or such remedy had been lost by delay. Then equity declared, on the merits of the case presented substantially as they are here, specific performance of the stipulations ought not to be decreed. It did not dismiss the bill because of a doubt as to the contract legal right, or a doubt as to whether the legal right had been infringed, or because there was an adequate remedy at law for enforcement of the condition, but because, through inaction, plaintiffs had no remedy at all, which, operating on the subject of the grant, would compel specific performance of the contract. How can a common law action now enforce a forfeiture of the land, if such remedy would have been ineffectual eleven years ago?

Suppose, instead of filing a bill in equity in 1881, Orne had brought ejectment to enforce a forfeiture; Fridenberg would

have set up the same equitable defense as in his answer to the bill; he would have claimed no forfeiture could be asserted, because of plaintiff's long delay. The trial judge, sitting as a chancellor, and blending equity with the law, would have been bound to instruct the jury, as decided by this court in Orne v. Fridenberg, supra, that if the buildings had been on the land for many years when defendant purchased, and no suit to enforce the forfeiture had been begun, their verdict should be for defendant. With a final judgment entered on that verdict, could plaintiffs, on the same facts, have maintained a second ejectment? The defense being purely equitable, the judgment would have been conclusive on the facts which raised the equity. The only difference is, in the equity suit, the master found the facts which this court adjudged a complete equitable defense. That is an end of strife on that question.

It is argued, laches is no defense to future prevention if there be no estoppel, and further, whatever may have been the supineness of plaintiffs in the past, there is in that no waiver of recurring breaches.

What will be the legal conclusion from permissive violations of the condition in the past, if proceedings be instituted to re strain threatened violations in the future, we are not called upon to decide. The question before us is whether, under the facts, a forfeiture can be enforced for permissive breaches in the past? As in the case of Lehigh Coal Co. v. Early, 162 Pa. 338, " The right of re-entry might have been enforced upon breach of the condition in the deed, if done at once or within a reasonable time; but the condition being subsequent, if the breach was acquiesced in by the grantor and valuable improvements made, a forfeiture of the estate after long delay will not be permitted."

As the court below should have affirmed defendants' sixth point, " That, under all the evidence and the law in this case, the verdict must be for defendants," no harm was done plaintiffs by submitting the evidence to the jury, and entering judgment on the verdict found by them for plaintiffs.

The judgment is affirmed.