# Freeland *versus* The Pennsylvania Railroad Co.

1. The Pennsylvania Railroad Co. after the purchase of the public works raised a dam on the Susquehanna; in an extraordinary flood the land of Freeland was overflowed, the injury being increased by the raising of the dam. *Held*, that under the Act of May 16th 1857 (Sale of Public Works), the company had the right to raise the dam and were not liable to Freeland.

2. The intention of the act was that the purchasers should hold and use the works for the objects for which they were created and bring them to the highest condition of utility.

3. The condition in which the Commonwealth had maintained the works was not to be the standard for the future.

4. The act conferred on the company the right to exercise the state's eminent domain and exempted them from liability for consequential damages.

5. The company is not bound to erect guard-walls to confine the stream to fixed limits and prevent overflow in high floods.

6. Evidence of the height of a flood after suit brought for damages by a previous one, was irrelevant unless it had been shown to have some connection with that one.

7. When evidence apparently irrelevant is offered, it must be stated how it is supposed to be relevant and this must appear in the bill of exceptions.

May 21st 1870. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ.

[Freeland *v*. Pennsylvania Railroad Co.]

Error to the Court of Common Pleas of *Dauphin county :* No. 84, to May Term 1870.

This was an action on the case, commenced January 18th 1867, by James Freeland against The Pennsylvania Railroad Company, for raising the Clark's Ferry dam of the Pennsylvania Canal, and flooding and injuring the land, improvements, &c., of the plaintiff. The dam was below and near Duncan's Island.  By the Act of May 16th 1857 (Pamph. L. 519) the legislature authorized the sale of the public works, and by the 3d section authorized the purchaser " to alter, enlarge and deepen the canals, to make such additional locks and dams, and to make, in whole or in part, a slack-water navigation as may be deemed expedient."

By section 5th, the purchaser of the public works was to be bound " ever thereafter to keep up in good repair and operating condition the line of canal from Hollidaysburg to Philadelphia (in this was included the Clark's Ferry dam), * * * and the said canal shall be and remain a public highway," &c.  Section 9th authorized the purchasers and their officers, &c., " to enter upon any lands adjoining or in the neighborhood of the works, and dig, take and carry away therefrom any materials necessary for enlarging, making, altering, deepening or improving said works, * * * or for constructing any * * * dam or other mechanical structure which may be required for said works, or * * * for improving any works already made."   In pursuance of this Act of Assembly, the public works, on the 21st of July 1857, were sold to the Pennsylvania Railroad Company, the defendants, who took possession of them, and in 1858 repaired the Clark's Ferry dam as well as other parts of the works.

The plaintiff owned a tract of land on the lower part of Duncan's Island.   In the spring of 1865 there was an extraordinary flood in the Susquehanna river which swept over the farm of the plaintiff, carried away some of his buildings and did other injury to his property.   The plaintiff alleged that the injury resulted from the company raising the dam higher than it had been before the purchase from the Commonwealth, and gave evidence for the purpose of showing that the defendants had raised the dam after their purchase.  He gave evidence also of the flood of 1865, and the injury he sustained by it; and evidence tending to show that the overflowing his lands and the injury he sustained resulted from raising the dam.  He offered to prove the height of a flood in 1868.  The evidence was rejected as relating to a time since the commencement of the suit, and a bill of exceptions sealed for the plaintiff.

The evidence by the cross-examination of plaintiff's witnesses and by defendants' witnesses was, that the flood of 1865 was the highest which had been known by them.

The defendants gave evidence also of the character of the

[Freeland *v.* Pennsylvania Railroad Co.]

repairs to the dam, and that what was done to the dam was necessary to keep the canal in operating condition.

The plaintiff's points were :—

1. The defendants acquired no right by virtue of their purchase of said works from the Commonwealth to increase the height of said dam above the level fixed and maintained by the Commonwealth.

2. Under the act authorizing the sale of said works to said defendants, and the deed conveying the same to them, defendants had not the right to raise the level of said dam higher than it had been built by the state, and are liable to plaintiff for the damage sustained by him from such increased height.

3. The clause contained in said act providing that the purchaser should "be bound to keep in good repair and operating condition" said works, imposed an obligation on said defendants, but conferred no right to increase the height of said dam above the level fixed and maintained by the state.

4. Said clause must be construed with reference to the level that had been fixed and maintained by the state, and the true intent and meaning of the act is, that the said works should be kept open and in repair for the use and enjoyment of all parties desiring to use and enjoy them, and contained no authority to increase the height of said dam above the level fixed and maintained by the state.

5. The question of skill, care and proper management is a question for the jury, and depends upon the facts of the particular case, and greater danger or risk demands greater care; care according to the circumstances is the rule.

6. If the defendants, supposing them to have been authorized to increase the height of the dam, could, by the use of proper skill, care and management, have so constructed the work as to provide against the occurrence of injury, they are liable in this action for the damage resulting from the want of such care and skill.

7. The question of the nature of the flood and its extent must be left to the jury, who must judge whether defendants took proper precautions to guard against its effects.

8. The concurrence of want of care, skill and proper management, with the act of Providence, in causing an injury to the plaintiff, on the part of defendants, would render them liable in this action.

9. The defendants have not shown that the building of the dam in question was ever authorized by the legislature, and in the absence of such authority shown by defendants, they are liable for all damage occasioned thereby while in their possession.

The court (Pearson, P. J.) negatived the 1st, 2d and 4th points of the plaintiff, and answered the others as follows :—

[Freeland *v.* Pennsylvania Railroad Co.]

" 3. We are of opinion that the purchaser of the public works was bound to keep them in good repair and operating condition, and if necessary to do so, the defendants had the right to increase the dam above the level fixed and maintained by the state, which had rarely kept the public works in what ought to be considered good operating condition.

" 5. This point is correct in law, but we see no evidence of want of care in the defendants in the present case.

" 6. This point is correct. We see no evidence in the case indicating a want of proper care and skill, as the defendants were not bound to prepare for, or guard against an unprecedented flood.

" 7. The question of the nature of the flood and its extent is for the jury, but all of the witnesses on both sides, including the plaintiff himself, declare that it was unprecedented, being some three feet higher than was before known in the Susquehanna river. A party is not required by law to guard against such unlooked-for events.

" 8. The law is as stated. But we see no evidence in the case indicating that the want of proper skill and management on the part of the defendants concurred with the act of Providence in causing the injury to plaintiff's property. We consider that the evidence shows it was solely the act of Providence.

" 9. We consider it sufficiently shown that the state had the right to build the dam in question; did build and keep it up for twenty-seven years, and then sold its right with the works to the defendants. The defendants are not liable for any injury done by the dam whilst in their possession, unless caused by their negligence or improper management, of which there is no proof."

Judge Pearson further instructed the jury :—

" We instruct you, that by a fair and reasonable interpretation of the Act of Assembly, the dam could lawfully be raised, if necessary to make good navigation.

" But there is clearly an implied power in the statute. The company is, in terms, authorized to build new dams *ad libitum.* Again, it is empowered to enter on the land of any one near the works and take materials for constructing dams *inter alia.* It would be a strained and very narrow construction to say that the assignee of the state works could build as many new dams as might by it be considered necessary, but could not increase the height of one already erected. We therefore instruct you that the railroad company had the right to increase the height of this dam, if, in the opinion of a skilful engineer, it was necessary in order to improve and keep up good navigation.

[ " But it is said that the defendant was bound to erect guard-walls to protect the island from overflowing. This had never been done by the state in the twenty-seven years that it had kept up

[Freeland *v.* Pennsylvania Railroad Co.]

this dam, and their want had never been felt.  In the year 1846, when an unprecedented flood occurred, some slight injury was done to the island by the water breaking over, but from that time until March 1865, nothing had occurred to prove their necessity or utility.  Under these circumstances we instruct you that the defendant was not bound to build guard-walls, or to foresee that the river was going to rise three feet higher than the flood of 1846, which had itself been unprecedented.]  * * *

[ " It is very questionable whether this dam added in the least to the elevation of the water at this point.  Many of the witnesses testify that the dam was entirely drowned out, that there was no break of the water visible.  All say that if perceptible, it was very slight.  Where the break of the dam cannot be perceived, it adds little or nothing to the elevation of the surface, as is well known to every one having any knowledge of hydraulics.  The river rose above all of that part of the island in the vicinity of the plaintiff's and defendants' property, and some of the plaintiff's witnesses express the opinion that but for these works of the defendants the whole island would have been swept off.]

[ " You will thus perceive that almost every material position of which the plaintiff predicates his right to recover, has been decided against him by the court.  Taking it for granted that the dam was raised higher by the defendant than when it was purchased from 'the state, yet that is not the proper test of the right of elevation.  The state was about to improve it, but, as it had stood for several years, boats drawing over three feet of water could not pass.  That was entirely insufficient for the exigencies of trade.  The boats should be able to float loaded down to four feet, else they could not compete with other carriers, and would be neither useful to the public nor to the company.  The original height of the dam was not the proper test of what might be found necessary for good and useful navigation.  Even at the present elevation it was found necessary, in times of low water, to use splash-boards nearly a foot wide, to float craft drawing four feet of water, which all of the witnesses say is necessary for successful navigation.]

" The defendant has assumed that there can be no recovery in this case because the injury is consequential, and many cases have been cited to that effect.  We are of the opinion that had this dam been built, or its height increased, without authority of law, or had it been badly and inartificially constructed, whereby the river at an ordinary freshet overflowed and injured the property of the plaintiff, an action on the case might be sustained ; we have several examples of such proceedings in our own reports.  For flowing the water back on the owners above, by means of a dam lawfully built, the remedy must be, under the statute, to assess the damages ; or, if there is no provision in the law, the party is without

[Freeland *v.* Pennsylvania Railroad Co.]

redress.   Here the complaint is of an unlawful and inartificial construction." * * *

The verdict was for the defendants.

The plaintiff took out a writ of error, and assigned for error:—

1. Rejecting his offer of evidence.

2–10. The answers to his points.

11, 12, 15. The parts of the charge in brackets.

13. Leaving no facts to be passed on by the jury.

*S. J. M. McCarrell* and *J. W. Simonton* (with whom was *D. Fleming*), for plaintiff in error.—The evidence rejected would have tended to show that the flood of 1865 was not extraordinary: Railway Co. *v.* Gilleland, 6 P. F. Smith 453.   There was evidence of which to predicate plaintiff's 2d point, and it should have been submitted to the jury: Trovillo *v.* Tilford, 6 Watts 468; Fish *v.* Brown, 5 Id. 441.   The measure of care to be exercised by the defendants was for the jury: McCully *v.* Clarke, 4 Wright 406; Penna. Railroad Co. *v.* Ogier, 11 Casey 71.   The charge, as a whole, was calculated to mislead; this is a ground for reversal: Reeves *v.* Railroad, 6 Casey 454.   Where there is any evidence of a fact, it should go to the jury: Stewart *v.* Wilson, 6 Wright 450; Stafford *v.* Henry, 1 P. F. Smith 518; Beatty *v.* Ins. Co., 2 Id. 456; Wilt *v.* Snyder, 5 Harris 77; Elder *v.* Reel, 12 P. F. Smith 308.

*L. W. Hall* (with whom was *F. Jordan*), for defendants in error.—Floods such as that of 1865 are visitations of Providence, the results of which must be borne by those on whom they come: McCoy *v.* Danley, 8 Harris 85; Lehigh Bridge Case, 4 Rawle 9; Bell *v.* McClintock, 9 Watts 119; Pitts., Fort Wayne and Chicago Railroad Co. *v.* Gilliland, 6 P. F. Smith 445.   The damages were consequential: Del. Div. Canal Co. *v.* McKeen, 2 P. F. Smith 117; Monon. Nav. Co. *v.* Coons, 6 W. & S. 101; Susq. Canal Co. *v.* Wright, 9 Id. 9; Henry *v.* Pitts. and Allegheny Bridge Co., 8 Id. 85; Watson *v.* Pitts. and Con. Railroad Co., 1 Wright 469. The repairs to the dam having been done under the requirements of the Act of May 1857, there can be no recovery for such damages.

The opinion of the court was delivered, July 7th 1870, by

AGNEW, J.—Some of these assignments of error rest upon questions not in the cause, and may be dismissed by stating what the controversy was.   The injury to the plaintiff's property, as declared upon and shown by the evidence, was caused by the overflow of Duncan's Island, in the Susquehanna, in the extraordinary flood of 1865.   It was alleged that the overflow was increased by raising the Clark's Ferry Dam, in the year 1858, by the Pennsylvania Railroad Company, after the purchase of the main line

[Freeland *v.* Pennsylvania Railroad Co.]

of canals and railroads under the Act of 16th May 1857, Pamph. L. 519. The real injury arises therefore from the reflux of the water caused by the increased height of the dam, and not from the manner of constructing it, or any want of skill or care in rebuilding. All questions as to its structure and skill and care in rebuilding, are therefore out of the case, and it falls back upon the right of the company to elevate the dam. This disposes of the 6th, 7th, 8th, 9th and 11th assignments of error. And even the right to raise the dam is scarcely a question, for the weight of evidence made it pretty clear that the dam was not raised higher than the state had established it. But, granting the fact of increased height, the company had ample authority, whether the conclusions be drawn from the main object of the state in the sale of the works or the special terms of the law. The great purpose of the Commonwealth—to advance the agriculture, commerce and manufactures of the state, and to unite its natural divisions in a common interest by means of navigable streams and canals—is forcibly expressed in the preamble to the Acts of 11th April 1825, Pamph. L. 238, and 25th February 1826, Pamph. L. 55. The Act of 1857, passed in the same spirit, was intended to preserve to the people of the state these valuable interests. It therefore bound the purchasers or assigns " to keep up in good repair and operating condition the line of said railroad and canal, extending from Harrisburg to Philadelphia," &c., and declared it to be " the true intent and meaning of this act that the said sections of canal and railroad, and every part thereof   *   *   *   *   shall be and remain a public highway, and kept open and in repair by the purchaser or purchasers thereof, or assigns as such, for the use and enjoyment of all parties, desiring to use and enjoy the same." It was the undoubted intention of the legislature that the purchasers of the main line of the public works should hold and use them for the same uses and objects for which they were created, and therefore to bring them up to their highest condition of utility and prosperity. Not only was the duty thus enjoined on the purchaser, but ample powers were given to perform it. It is declared in the 3d section that " it shall be lawful for the purchasers, or their assigns, to straighten and improve the said Philadelphia and Columbia Railroad, and to extend the same to the Delaware river, in the city of Philadelphia, &c., and it shall be further lawful for them to *alter, enlarge and deepen* the canal portion of said main line, and to make such additional *locks and dams,* and to make in whole or in part a *slack-water navigation* as may be deemed expedient." In the 9th section it is made " lawful for the purchasers, their successors or assigns, and their officers, &c., to enter upon any lands adjoining, or in the neighborhood of the works, and dig and take away materials necessary for *enlarging, making, altering, deepening or improving* said works, or any portion there-

16 P. F. SMITH—7

[Freeland *v.* Pennsylvania Railroad Co.]

of, or for constructing any railroad, canal, bridge, viaduct, *dam* or other mechanical structure which may be required for the said works, or for making a *slack-water* navigation, or of improving any works already made." Thus we have not only the great purposes of the state to be subserved by these works, but the express grant of the largest power, to alter, enlarge and improve them, so as to make them attain their highest degree of usefulness and prosperity. It is very clear it was not her intention to make her own failure to keep them in good operating condition a standard for the future. On the contrary, it was hoped that private interest would accomplish, through these works, what she had been unable to perform through the carelesness, indifference, if not dishonesty, of many who had served her. We are therefore of opinion that the railroad company had a right to raise the height of the dam in question, and that the height at which it had been maintained by the state, previous to the sale, is not the standard. The right to alter, enlarge and improve the canal, and to make a slack-water navigation, carries with it the power to maintain the works, as thus enlarged, in a full operating condition. The learned judge below kept carefully within the limits of the company's power in his instructions to the jury.

The right thus to exercise the power of eminent domain belonging to the state, exempts the company from liability for consequential damage caused by the back-water of the dam: Monon. Nav. Co. *v.* Coons, 6 W. & S. 101; McKeen *v.* Del. Div. Canal Co., 13 Wright 424. This rule would be overturned were we to hold that the state, or a company exercising the power, is bound to erect guard-walls along the stream above to confine the water of the stream to fixed limits, and to prevent an overflow in time of high floods. And if the duty existed, it could not serve the plaintiff's case, when, by all his own testimony, it was shown that the flood of 1865 was the most extraordinary known within the memory of man, it being three feet higher than the highest known before. A guard-wall, if it had been built according to the then light of experience, would have fallen far short of the protection the plaintiff now asks from it. It is perfectly obvious the plaintiff's injury arose from the act of God, and not from any unwarranted neglect of the company.

This disposes of all the remaining assignments of error, except the 1st, as to the rejection of the offer to prove the flood of 1868. In view of what we have said as to the right of the defendants to raise the dam, the rejection is immaterial, even if erroneous. But primâ facie the rejection was right. The height of the flood after suit brought, was clearly irrelevant, unless it could be shown that it bore in some way on the previous flood that caused the injury. As far as we can gather from the bill of exceptions, no such bearing appears. When a party offers evidence, apparently irrelevant,

[Freeland *v.* Pennsylvania Railroad Co.]

it is his duty to state the aspect in which it is believed to become relevant, so as to bring it to the attention of the court, and this should be incorporated in the bill of exceptions, otherwise there is nothing to manifest the error in rejecting it. Finding no error in the record, the judgment is affirmed.