## Jackman, Appellant, *v.* Rosenbaum Co.

*Party-walls—Taking down single wall—Consequential damages—*
*Trespass—Common law—Insurer against damages—Negligence—*
*Independent contractor—Police power—Eminent domain—Neces-*
*sity—Menace from fire—Damnum absque injuria—Statutory con-*
*struction—Pittsburgh Act of June 7, 1895, P. L. 135.*

1. The fundamental principles of the common law, while liable to
expansion, are in essence unchangeable, but their applicability to
given conditions necessarily varies according to changes wrought by
usage or statutory enactment, and, consequently, what at one time
was a trespass may not be so at a later date.

2. After the necessity for party-walls in thickly populated dis-
tricts became recognized and their construction authorized and
regulated, an entry on adjoining property to construct a party-wall,
while formerly a trespass, was no longer so.

3. The right to build party-walls upon division lines between
lots in certain of the cities of this State, while regulated by statute,
has developed into the ordinary and natural way to use and enjoy
real estate of that character, to such an extent as to "become
a settled rule of property."

4. It is a general rule of law that no one has a vested right to
be protected against consequential injuries, arising from a proper
exercise of rights by others, and this rule is peculiarly applicable
to injuries resulting from the exercise of public powers.

5. All eminent domain and police power cases involve an exercise
of sovereignty, but many principles, restrictions and constitutional
rules, applicable to eminent domain cases, are inapplicable to police
power cases in general.

6. The party-wall system rests on the police powers of the State,
and, in the absence of statutory liability, injuries resulting from the
proper exercise of the right to build a party-wall, are damnum
absque injuria.

7. It seems, but is not decided, that where such an operation of
the police power amounts to the exercise of the right of eminent
domain, the rules and principles commonly applicable to the latter
class of cases apply, but not otherwise.

8. The ever-present menace from fire, in thickly populated cities,
justifies and sustains the party-wall system, and the legal results
which flow therefrom, on the theory of inevitable necessity.

9. The party-wall system would seem to be sustained also by the power of the government to prescribe public regulations for the better and more economical management of property of persons whose premises adjoin.

10. The building-owner, or one at whose instance a party-wall is constructed, in accord with the Pittsburgh Act of June 7, 1895, P. L. 135, is not liable for consequential damages caused by the removal of the old single wall of the adjoining building, or for negligence where the work is done by an independent contractor, without supervision or interference by the building-owner.

11. Since the building-owner is not under the liability of an insurer to the adjoining owner, the established principles applicable to the defense of independent contractor govern.

*Constitutional law—Due course of law—Consequential damages —"Injury"—No limit of amount—Federal Constitution, Fourteenth Amendment—State Constitution, Article I, Section 11; Article III, Section 21; Article XVI, Section 8.*

12. The Fourteenth Amendment to the Federal Constitution, providing that no person shall be deprived of life, liberty or property, without due process of law, does not restrict the police powers of the State, which embrace the existing party-wall system, with its limitations on the rights of property.

13. Article I, Section 11, of the State Constitution, providing that "every man for an injury done him in his lands, etc., shall have a remedy by due course of law," does not give consequential damages for an act of sovereignty, police powers or otherwise, "injury" here meaning "legal injury."

14. Article XVI, Section 8, of the State Constitution, giving damages for property injured but not appropriated, does not apply to incidental losses occasioned through an exercise of power conferred in a police statute, not of the eminent domain class.

15. Article III, Section 21, of the State Constitution, providing that no statute shall limit the amount to be recovered for injuries to property, does not have the effect of conferring a right of recovery where none otherwise exists.

Argued Oct. 15, 1918.  Appeal, No. 33, Oct. T., 1918, by plaintiff, from order of C. P. Allegheny Co., April T., 1915, No. 1373, entering judgment for defendant n. o. v. in case of Edward F. Jackman v. The Rosenbaum Company.  Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING, SIMPSON and FOX, JJ.  Affirmed.

Trespass for injury to a building.  Before COHEN, J.

From the record it appeared that the action was to recover damages for injuries to the Duquesne Theatre, owned by plaintiff, and situated on Penn avenue, Pittsburgh, caused by the removal of an old wall on plaintiff's property, which had been condemned by the city authorities and ordered removed.  The defendant removed the wall so that a party-wall might be erected under the Act of June 7, 1895, P. L. 135.  Other facts appear by the opinion of the Supreme Court.

*Error assigned* was in entering judgment for defendant n. o. v.

*Ernest C. Irwin* and *John M. Freeman,* of *Watson & Freeman,* for appellant.—Where one owner erects a party-wall along the line of the adjoining property, and for the purposes of such erection tears out an existing wall of the other property owner, he is liable for all damages accruing to the other property owner, whether caused by negligent acts or not.

The statutory right to build a party-wall partly upon another man's land, is in derogation of common-law rights and is to be strictly construed: Hoffstot v. Voight, 146 Pa. 632, 636; Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426; Keim v. City of Reading, 32 Pa. Superior Ct. 613; Felt v. Cook, 95 Pa. 247; Melan v. Smith, 134 Pa. 649; Borland v. Nichols, 12 Pa. 38; Heron v. Houston, 217 Pa. 1.

A provision read into the act, forbidding our recovery of damages, would be violative of Section 21 of Article III of the Constitution of Pennsylvania: Erdman v. Mitchell, 207 Pa. 79.

A provision read into the act forbidding our recovery of damages would be violative to the Fourteenth Amendment to the Constitution of the United States: Chicago, Etc., R. R. Co. v. Chicago, 166 U. S. 226; Sweet v.

Rechel, 159 U. S. 380; Fallbrook Irrigation Dist. v. Bradley, 164 U. S. 112; Holden v. Hardy, 169 U. S. 366; Missouri Pacific Ry. v. Nebraska, 164 U. S. 403; Philadelphia Clay Co. v. York Clay Co., 241 Pa. 305.

The authorities which have passed on the question hold that damages should be allowed without proof of negligence: Brooks v. Curtis, 50 N. Y. 639; Potter v. White, 6 Bos. (N. Y.) 644; Fisher Leaf Co. v. Caldwell, 15 Ky. Law Rep. 542.

*A. Leo Weil,* with him *Charles M. Thorp* and *L. Pearson Scott,* for appellee.—Where private property is taken under the police power no compensation need be made: Com. v. Plymouth Coal Co., 232 Pa. 141.

The party-wall legislation of Pennsylvania was enacted by virtue of the police power of the Commonwealth: Hoffstot v. Voight, 146 Pa. 632; Heron v. Houston, 217 Pa. 1.

The party-wall legislation of this Commonwealth has been enforced without the allowance of compensation to the party whose property was taken in pursuance thereof: Heron v. Houston, 217 Pa. 1.

Consequential damages cannot be recovered even under the statutes providing compensation for the taking of property under the right of eminent domain, when such damages are not provided for by such statutes. A fortiori, consequential damages cannot be recovered under statutes providing for the taking of property under the right of the police power when no compensation whatever is provided for in such statutes: Monongahela Navigation Co. v. Coons, 6 W. & S. 101; O'Connor v. Pittsburgh, 18 Pa. 187; Freeland v. Penna. R. R. Co., 66 Pa. 91; Chicago & Alton R. R. v. Tranbarger, 238 U. S. 67; New Orleans Gas Light Co. v. Drainage Commission, 197 U. S. 453.

*Ernest C. Irwin* and *Watson & Freeman,* for appellant, in reply.—The police power does not justify the destruc-

tion of property, as shown in this case, without compensation: Com. v. Plymouth Coal Co., 232 Pa. 141; Philadelphia v. Scott, 81 Pa. 80.

The police power is not superior to the constitutional limitations, but is entirely subservient thereto: Poland Coal Co.'s Case, 58 Pa. Superior Ct. 312; Lake Shore, Etc., Ry. v. Smith, 173 U. S. 685.

No common law right is recognized in this State or elsewhere for the erection of a party-wall partly upon another man's land, without his consent: Hoffstot v. Voight, 146 Pa. 632; Whiteman v. Shoemaker, 2 Pears. 320.

OPINION BY MR. JUSTICE MOSCHZISKER, January 4, 1919:

A proper consideration of the many important points involved in the present case requires unusually lengthy treatment; therefore, to facilitate a ready understanding of, and future reference to, this opinion, we have divided it into appropriate heads, as follows: (I) Statement of case, including contentions of parties, with positions of the court below in reference thereto and its final judgment. (II) History of party-wall system, and legislation. (III) Police power and eminent domain. (IV) Constitutional points. (V) Applicable general principles and authorities, with comments on merits of case and relevant legislation. (VI) Cited cases discussed and distinguished. (VII) Charges of negligence and defenses thereto, particularly that of independent contractor. (VIII) Judgment.

I.

Plaintiff sued in trespass to recover damages for alleged injuries to the Duquesne Theatre, in the City of Pittsburgh, and other losses claimed to have ensued to him as a consequence of the removal, by defendant, of an old wall, belonging to that building, which ran along, but did not extend over, the division line be-

tween the properties of plaintiff and defendant, the latter requiring the space occupied by the old wall for the purpose of erecting a party-wall for a large department store in course of construction upon its lot. Defendant originally contemplated incorporating the old wall into the new one; but the city authorities decided that the former was not sufficiently substantial for that purpose, and ordered its removal, which was done by the contractor in charge of the erection of defendant's building. Plaintiff claimed consequential damages only; he did not ask payment for the wall that was taken down, nor for his ground occupied by the new wall, nor compensation for material taken and applied to the purposes of the latter,—he sought to recover only for loss of rent and the cost of repairing and refitting the theatre. The verdict favored plaintiff; but defendant moved for judgment n. o. v., which was granted, and this appeal followed.

The party-wall proceedings were in accord with the provisions of the Act of June 7, 1895, P. L. 135, and plaintiff neither alleged nor endeavored to prove defendant had not strictly complied with the law; but claimed to recover upon the theory that, while defendant had the legal right to erect the new wall, and, if necessary, to cause the removal of obstructions standing in its way, yet in so doing it became liable as an insurer for all damages, direct or consequential, caused by the work in question, whether through negligence or otherwise. Plaintiff also claimed in the court below, and contends here, that, if necessary to prove negligence, the evidence is sufficient to that end; and, further, that the defense of independent contractor is not applicable to a case of this character.

On the other hand, defendant contends that, in the matters concerned, it acted strictly within its legal rights, without negligence, and, further, if any negligence existed, either in the doing of the work in question or through delay in its completion, this must be at-

tributed to and charged against the contractor, who at all times proceeded without supervision or interference on part of defendant.

In entering judgment n. o. v., the court below determined that the party-wall system, as established in Pittsburgh, rested upon the police power of the State, and "injuries resulting from the mere exercise of the right to build a party-wall" were "damnum absque injuria"; at the same time, saying, as to the allegations of negligence, "We see no reason why one exercising party-wall privileges......should be held liable for any damage resulting from negligence or delay where the work agreed upon is done by an independent contractor and is legal"; and holding, "there was no evidence of negligence or delay [sufficient] to submit to the jury; [but] if there had been, it would have been the negligence of the independent contractor, for which defendant is not liable in any event." Additional grounds for entering the judgment are also given; but, since the two principal reasons just stated, if sound, are sufficient in themselves, we need not consider the others.

The first reason in support of the judgment, that this is a case of damnum absque injuria, is, in substance, the court's answer to appellant's principal contention, which, before considering, we shall restate in the words of plaintiff's counsel, as follows: "We contend that the right to erect a party-wall upon the adjoining owner's land, being wholly statutory, is derogatory to common law rights; that such right is, therefore, to be strictly construed; that the statute authorizing the construction of such walls does not relieve the party building the wall from common law liability for damages; that a provision read into the statute permitting one man to invade another's land without liability for damages would be unconstitutional, as depriving an owner of his property without compensation and without due process of law, violating both the Constitution of Pennsylvania and the Constitution of the United States."

### II.

To pass properly on the several points suggested by the contention just quoted, it is necessary briefly to review the foundations and development of the party-wall system in Pennsylvania. As stated in a note to Bloch v. Isham, 7 American Law Register (N. S.) 8, 11, "The custom of party-walls, developed by time and regulated by various statutes, was introduced into this country . . . . . . by the first settlers in Philadelphia under William Penn; and, in 1721, the legislature of Pennsylvania passed an act . . . . . . regulating in detail the whole subject of party-walls in the city of Philadelphia"; see also Hoffstot v. Voight, 146 Pa. 632, 636.

The Act of February 24, 1721, will be found in 1 Dallas's Laws of Pennsylvania 152, 3 Pa. St. at L. 244, also 1 Sm. L. 125; and it will be noted therefrom that the meaning of the term "party-wall" is treated as then established, the statute merely undertaking to afford a remedy for the "diverse inconveniences, irregularities and controversies" which, as it states, "frequently happen in relation to party-walls."

The origin of our present party-wall regulations was the great London fire of 1666. They are primarily designed to guard life and property; and the theory which sustains these laws, as police statutes, seems to be that, in thickly populated cities there is a constant menace from fire, against which they serve as a common protection: see Vollmer's Appeal, 61 Pa. 118, 125 et seq., where Mr. Justice READ narrates the historical development of this branch of the law; also see Traute v. White, 46 N. J. Eq. 437, 441, and Gibbons on the Law of Dilapidations and Nuisances (1st Eng. Ed., 1838) 110. Another theory, suggested by the United States Supreme Court as applicable to this class of cases (see Wurtz v. Hoagland, part "V" of this opinion, p. 173), is that, in congested districts, such regulations serve the public welfare by providing a common, economical means of using adjoining properties.

So far as Pittsburgh is concerned, the necessity for party-walls was recognized, and their regulation provided for, in the first act of incorporation, passed April 22, 1794: see 3 Dallas's Laws 588, 591; 4 Carey & Bioren's Laws 421, 423; 15 St. at L. 161, 164, in connection with the act incorporating the Borough of Reading, to which this Pittsburgh statute refers, the Reading Act appearing in 11 St. at L. 124, 130; 2 Dallas's Laws 129; 2 Carey & Bioren's Laws, 418, 424. The second act of incorporation, passed March 5, 1804, P. L. 199, 203 (17 St. at L. 648, 651), also contains provisions as to party-walls; as do the Acts of March 18, 1816, P. L. 160, 163; April 8, 1872, P. L. 986, and June 7, 1895, P. L. 135.

The Act of June 7, 1895, supra, regulating party-walls in cities of the second class, provides for the removal of an old party-wall, when "unfit or unsafe, for the purpose of erecting a new building or buildings upon the adjoining lot" (P. L. 140), and how the expenses shall be borne; but there is nothing in this statute, or in the others called to our attention, that makes any provision whatsoever for the contingency of an old wall which, while standing upon one side of the division line between two properties, yet, as in the case at bar, occupies space needed for party-wall purposes.

There being no statutory liability for the damages here alleged, the question of the validity of plaintiff's claim must be worked out on general principles, and in the light of history; but before further discussion of the case from these aspects, we shall first dispose of the several objections to the judgment which appellant urges upon constitutional grounds.

### III.

In approaching the points we are about to take up, the following considerations must be kept in mind: Every act of sovereignty which, for the public welfare, adversely affects private property, whether under the right of eminent domain or otherwise, represents, in a broad sense, an exercise of police power; but, in Pennsyl-

vania, as well as in most other jurisdictions, whenever, in the making of public improvements, real estate, or certain other kinds of private property connected there-with, are either actually appropriated or so affected as permanently to impair the value thereof (Iron City Auto Co. v. Pittsburgh, 253 Pa. 478, 493), such instances are segregated, and, for all legal purposes, in effect, classified under the head of "Eminent Domain," as to which there are many principles, restrictions and special constitutional rules inapplicable to police power cases in general, not the least significant of these being the right to damages for property thus taken, injured or destroyed.

### IV.

As to party-wall acts in general, it is stated in 20 R. C. L. 1087, "The constitutionality of these statutes has been assailed on the ground that they authorize the taking of private property of another for private use, but they are generally upheld on the ground of [being] a valid exercise of the police power"; and this is the broad reason given in our cases for sustaining such legislation: Hoffstot v. Voight, 146 Pa. 632, 636; Heron v. Houston (No. 1), 217 Pa. 1, 3.

The following, perhaps rather broadly put, statement of general principle, from New Orleans Gas Light Co. v. Drainage Commission, 197 U. S. 453, 462 (citing Chicago, etc., R. R. Co. v. Chicago, 166 U. S. 226, 255) that "uncompensated obedience to a regulation enacted for the public safety under the police power of the State, is not a taking of property without due compensation," has relevancy here.

It has been decided repeatedly that the 14th amendment to the Federal Constitution does not limit the police power of the states. As said in 12 C. J. 1197, "The constitutional guaranties that no person shall be deprived of life, liberty or property without due process of law, do not limit, and were not intended to limit, the subjects on which the police power of the State may law-

fully be exerted; these guaranties have never been construed as being incompatible with the principle, equally vital, because essential to peace and safety, that all property is held under the implied obligation that the owner's use of it shall not be injurious to the community"; see cases there cited and Chicago & Alton R. R. Co. v. Tranbarger, 238 U. S. 67, 76; New Orleans Gas Light Co. v. Drainage Commission, 197 U. S. 453, 462; also Nolan v. Jones, recently decided by us, reported in 263 Pa. 124.

Article I, Sec. 11, of our present State Constitution, provides that "all courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have a remedy by due course of law." The same provision is found in Art. IX, Sec. 11, of the Constitutions of 1790 and 1838; but our decisions show that this has never been construed as conferring the right to recover consequential damages to property, due to the operation of the exercise of an act of sovereignty, police power or otherwise. That is to say, the word "injury" in this section of the Constitution has been construed uniformly in the strict sense of "legal injury," and, prior to 1874, damages were recoverable only when land was actually appropriated for public purposes, consequential losses, even in eminent domain cases, being accounted "damnum absque injuria": Case of P. & T. R. R. Co., 6 Wh. 25, 46; Monongahela Navigation Co. v. Coons, 6 W. & S. 101, 114-15; O'Connor v. Pittsburgh, 18 Pa. 187, 190; Freeland v. Pa. R. R. Co., 66 Pa. 91, 98; Fyfe v. Turtle Creek Borough, 22 Pa. Superior Ct. 292, 297; and other authorities mentioned in the note on page 210, 2d col., vol. I, of Stewart's Purdon. The present Constitution (Art. XVI, Sec. 8) was the first to give a universal right to recover damages for property injured or destroyed—not actually appropriated; but the operation of this provision is confined to that variety of cases, involving the exercise of an act of sovereignty affecting property, which is classified

under the head of "Eminent Domain" (Chester County
v. Brower, 117 Pa. 647, 656), and it in no manner refers
to or affects cases (such as the one at bar) where inci-
dental losses have been occasioned through an exercise
of power, conferred in a police statute, not of the emi-
nent domain class: Betham v. Philadelphia, 196 Pa.
302, 312.

Article III, Sec. 21, of the Pennsylvania Constitution,
providing that "no act of the general assembly shall
limit the amount to be recovered......for injuries to
......property," is called to our attention by plaintiff,
who contends that "not only does this constitutional
provision declare every man shall have a remedy for in-
juries to his property, but also that such remedy shall
not be tampered with, limited or restricted"; and plain-
tiff argues that, if a construction is placed upon party-
wall legislation which denies the right to consequential
damages, it in effect so limits "the amount to be recov-
ered," in such instances, as to entirely deprive one in his
position of a legal remedy. While, under this constitu-
tional provision, no valid statutory limitations may be
placed upon claims for injuries recoverable at law, yet
it does not have, and cannot properly be given, the ef-
fect of conferring a right of recovery where none other-
wise exists. Here (disregarding momentarily the ele-
ment of negligence) the real question is, has plaintiff a
right to recover against defendant consequential dam-
ages due to the mere building of the party-wall? If not,
the provision under immediate consideration has no rele-
vancy; which is all that needs now be said in reference
thereto.

Although the police power is an essential attribute of
government, which the Constitution of Pennsylvania
protects from abridgment (Art. XVI, Sec. 3) yet at-
tempts to produce, through its exercise, wrongful re-
sults, may of course be frustrated, especially when they
run counter to adverse constitutional limitations (Leisy
v. Hardin, 135 U. S. 100, 108; Lake Shore, etc., Co. v.

Smith, 173 U. S. 684, 689; Eubank v. City of Richmond, 226 U. S. 137, 143); but, as we have shown in the preceding paragraphs, the constitutional provisions depended upon by plaintiff do not, in themselves, when applied to the legislation here in question, subject defendant to a liability for damages, on the facts in this case. Therefore, since the statutes involved do not in terms place such obligation upon defendant, if the liability exists, it must be because of relevant general principles of law, which we shall next examine.

### V.

Defendant's entry upon the land of plaintiff, for the purpose of building a party-wall, having been made under and by virtue of the police power of the State, was lawful; the original entry being lawful, the following general principles govern, and, as we shall show, effectually defeat plaintiff's claim for damages: "It is a general rule that no one has a vested right to be protected against consequential injuries arising from a proper exercise of rights by others; this rule is peculiarly applicable to injuries resulting from the exercise of public powers. Under the police power the State sometimes destroys, for the time being, and perhaps permanently, the value to the owner of his property, without affording him any redress": Cooley's Constitutional Limitations, 7th Ed., 548. "No cause of action arises from the doing of a lawful act or the exercise of a legal right, if done or exercised in a lawful and proper manner, the resulting damage, if any, being damnum absque injuria. A liability may, however, arise from the doing of a lawful act, or the exercise of a legal right in a negligent or improper manner; but in such cases the liability is based not upon the act done, but upon the manner of doing it. While there is an ancient maxim to the effect that one must so use his own property as not to injure another, the maxim, in its legal sense, has reference not to the mere infliction of damage, but to the violation of

a right, and means only that one must so use his own as not to violate a legal right of another. Everyone has a right to the natural use and enjoyment of his own property, and, for lawful acts done by one person upon his own property in a lawful and proper manner, there is no cause of action, although damage to another may incidentally result therefrom": 1 Corpus Juris 965 et seq.

The building of party-walls upon division lines between lots in certain of the cities of this State, while regulated by statute, has developed into the ordinary and natural way to use and enjoy real estate of that character, to such an extent as to "become a settled rule of property" (Heron v. Houston, No. 1, 217 Pa. 1, 3), and, in effect, to make applicable the principle that every man is entitled to the ordinary and natural use and enjoyment of his property without being responsible to his neighbors for inconvenience or incidental losses which they may suffer through such enjoyment: see, on this general principle, Penna. Coal Co. v. Sanderson, 113 Pa. 126, 145; Penna. R. R. Co. v. Lippincott, 116 Pa. 472, 482 et seq.; and, on its application to a party-wall case, Negus v. Becker, 143 N. Y. 303, 308, et seq.

If it be said the building-owner of a party-wall (meaning the one at whose instance the wall is constructed) uses not only his own property but also that of his neighbor, the answer is: In communities where party-walls have for generations been recognized and regulated by legislation, such as the cities of Philadelphia and Pittsburgh, each adjoining lot owner has, for party-wall purposes, what is tantamount to an easement of support in the premises of his neighbor (see note to Bloch v. Isham, 92 American Decisions 287), to the full enjoyment of which he is entitled whenever he erects a wall of that character; and, when either lot holder builds upon his own property up to the division line, he does so with the knowledge that, in case of the erection of a party-wall, that part of his building which encroaches upon the portion of the land subject to the easement will

have to come down, if not suitable for incorporation into the new wall. This is "no invasion of the absolute right of property, for that absolute involves a relative, in that it implies the right of each adjoiner, as against the other, to insist on a separation by a boundary more substantial than a mathematical line": Evans & Watson v. Jayne, 23 Pa. 34, 36. The present proposition comes to this: The strip of land, the middle of which constitutes the dividing line between the properties of plaintiff and defendant, was dedicated, in theory of law, to party-wall use; and, when so desired by either of the respective owners, neither could, without the consent of the other, prevent its occupation for that purpose.

As declared in Heron v. Houston (No. 1), 217 Pa. 1, 4, citing Western National Bank's App., 102 Pa. 171, "this right [of easement] cannot be taken from him by the adjoining owner building exclusively upon his own land, either to the line or a short distance therefrom"; for (Barns v. Wilson, 116 Pa. 303, 307), the right to construct a party-wall on the ground thus occupied by him "arises out of a provision of the law to which all owners of real property......are subject, and in reference to which all conveyances......must be supposed to have been made and accepted." Therefore, defendant committed no trespass against plaintiff when he entered upon his land; on the contrary, defendant, in so doing, exercised merely a lawful right conferred upon him by valid police statutes.

That the acts of assembly here in question are properly classed as valid police statutes, it is now too late to dispute (Heron v. Houston, supra); but, even aside from this, we cannot sustain plaintiff's contention to the effect that, when absolute immediate danger to the public is not present, then all "excuse for a taking or destruction of property without compensation is absent"; for the Pennsylvania view is not so extreme. In Fidelity, etc., Co. v. Fridenburg, 175 Pa. 500, 507, 508, a regulation requiring fire escapes on certain structures, in order to

avert a possible, remote catastrophe, is treated as a valid exercise of the police power; and, in Com. v. Plymouth Coal Co., 232 Pa. 141, 150, a statutory provision that obliges owners of adjoining coal properties to leave pillars along the division line, so as to avoid possible, future dangers, is held, under the police power, not to be an unconstitutional taking of property without compensation. In Philadelphia v. Scott, 81 Pa. 80, 86, we say that legitimate exercise of the police power is "generally based upon disaster, fault or inevitable necessity"; and, as hereinbefore noted, the ever-present menace from fire, in thickly populated cities, justifies and sustains our party-wall system, and the legal results which flow therefrom, on the theory of inevitable necessity.

If it be said the dangers from fire may be amply provided against in other ways, the answer is that, since the ordained method presents a long established, oft approved and reasonably proper means to accomplish the desired purpose, which, in congested districts (where, for the public welfare, it is desirable and necessary to economize land space), contributes to the common economical management of adjoining properties, its validity, as a proper police measure, cannot be attacked successfully.

In connection with the thought just suggested, concerning the right to use the police power of the state to work out a common scheme for the economical management of adjoining properties, see Wurtz v. Hoagland, 114 U. S. 606, 611 (involving the constitutionality of a state law for the common drainage of adjacent lands), where Mr. Justice GRAY, quoting from another case, says: "But there is another branch of legislative power that may be appealed to......, the power of the government to prescribe public regulations for the better and more economical management of property of persons whose properties adjoin......; such as the power of regulating the building of party-walls, making and maintaining party fences and ditches...... This is a well known

legislative power, recognized and treated of by all juris-consults and writers upon law throughout the civilized world; a branch of legislative power exercised......before and since the revolution, and before and since the adoption of the present Constitution, and repeatedly recognized by our courts." Upon the application of this power to a land irrigation case, see Fallbrook Irrigation District v. Bradley, 164 U. S. 112, 163, where it is said: "In such case the absolute right of each individual owner of land must yield to a certain extent or be modified by corresponding rights on the part of other owners, for what is declared upon the whole to be for the public benefit." Of course, where such an operation of the police power amounts to an exercise of the right of eminent domain, the rules and principles commonly applicable to the latter class of cases apply, but not otherwise.

The method here adopted to advance the public welfare being a valid one, and not even contended to be, in any sense, an exercise of eminent domain, the question is, has plaintiff, in the absence of legislation giving the right to recover damages, a present common law right in that regard, which the courts should enforce? In searching for an answer to this question, we should not approach the point as though the Act of 1895, supra, were the origin of Pennsylvania's party-wall system (which, in a measure, appellant does), when, as a matter of fact, our legislation upon that subject antedates the foundation of the Commonwealth. Although the system may have originated in English statutes, it (as stated by our Brother STEWART in Heron v. Houston, supra) has "become," by enactment and reënactment, acceptance and long acquiescence, a "settled rule of property," where applicable in this State; moreover, it was such long before any of the rights now insisted upon by plaintiff became fixed or established; and, thereunder, such an act of entry as here complained of against defendant was entirely lawful,—which historical fact

should be taken into account in considering plaintiff's several propositions. Even the Constitution of the United States must be read in the light of the history of the law as it previously existed (Smith v. Alabama, 124 U. S. 465, 478; U. S. v. Wong Kim Ark, 169 U. S. 649, 653-4); and thus plaintiff's alleged common law rights must be viewed.

The fundamental principles of the common law, while liable to expansion, are in essence unchangeable, but their applicability to given conditions necessarily varies according to changes wrought by usage or statutory enactment; and, pursuing this thought, what today is a trespass, may, by development of law, not be so to-morrow. Therefore, it will not do to say (as plaintiff does), since, once upon a time, at common law, the uninvited entry upon the land of a neighbor, to build a party-wall, would have been a tort, giving rise to a claim for damages, that at the present day such an act has all the attributes of a common law trespass, except those expressly removed by statute, and, as the statute now before us does not specifically deprive plaintiff of his right to damages, that this particular attribute still adheres; for the contention overlooks the all important fact that, under present conditions, the law views an entry of this character as constituting no wrongful but a wholly rightful act. Hence, the only general principles or common law rules applicable, are those relevant to acts of the former and not of the latter character. This being so, the case cannot properly be looked at from the angle which plaintiff would have us take, but must be viewed thus: At common law, before the necessity for party-walls was recognized, for one to attempt, without leave, the construction of a wall of that character partly on the land of his neighbor would, of course, have been a trespass, upon the commission of which a right to damages immediately ensued. When, however, the necessity for party-walls in thickly populated districts was recog-

nized, and their construction authorized and regulated, such an entry no longer constituted a trespass, and, if proceeded with according to prescribed methods, in the absence of harmful negligence, the building-owner, acting by lawful authority, could not be held answerable for consequential damages. In other words, when the building-owner's act, in going upon land of his neighbor, became lawful, different common law principles applied, under which the right to damages, that had followed in the wake of what before was a tort, ceased to exist; and thereafter no damages could be recovered for such an entry, or for lawful acts rightfully done pursuant thereto, until so ordained by the law-making power.

The present case does not involve the removal of an old party-wall, in the building of the new one, and we do not intend in any manner to pass upon the efficacy of the provision, contained in the acts of assembly applicable to cities of the first class, concerning the liability for damages, in such instances, on the part of the building-owner to the adjoining owner; but, since there is no such provision in the Act of 1895, supra, as to cities of the second class, its presence in the other statutes may be noted as a legislative recognition of the necessity therefor, if it were desired to make damages of any kind recoverable under the operation of such legislation; and, in this connection, it may be further noted, as a cumulative suggestion, that, when a real party-wall, occupying the division line between two properties, has once been actually constructed, if, owing to changed conditions, a larger one is required, or for any other good and sufficient reason the original wall is subsequently taken down by either owner, such a case presents, on the merits, a stronger legislative reason for allowing damages to the non-consenting owner than an instance like the one before us, where the old, removed wall, occupying land on only one side of the division line, is not in fact a party-wall, and, therefore, must have been erected

with full knowledge on the part of its owner that, some day in the future, it might have to make way for a wall of that character.

Party-wall legislation must be strictly construed (Hoffstot v. Voight, 146 Pa. 632, 636) ; but one cannot, by any proper character of construction, put something into statutes which is absent therefrom, and, as previously said, there is nothing in the present relevant acts of assembly which either directly or indirectly confers a right upon plaintiff to recover damages, on the facts in this case; neither can his alleged right in this respect be worked out on relevant common law principles nor by force of the constitutional provisions depended upon by him; therefore, he has no warrant for recovery, and the court below did not err in so deciding.

To sum up our consideration of points thus far discussed : The party-wall system represents a valid exercise of police power, and, thereunder, all persons in the old City of Pittsburgh hold their lands subject to the right of adjoining owners to construct such walls; on the facts in this case, the exercise of that right does not constitute either a taking or injury of property, within the constitutional meaning of those terms, nor is it in any sense a trespass; hence (aside from all questions of negligence), in the absence of a legislative provision conferring the right to recover damages, the present plaintiff is not entitled thereto.

VI.

Two cases from the common pleas of England, cited by appellee, i. e., Bryer v. Willis, 23 Law Times Reports 463, and Thompson v. Hill, 22 id. 820, indicate that, at the present day, in that country (in the absence of negligence or delay) the building-owner of a party-wall is not responsible to his neighbor for consequential damages; and Heine v. Merrick, 41 La. Ann. 194, 206, rules that, in demolishing an old wall and building a new party-wall, the building-owner exercises an absolute right conferred upon him by law, and is "not bound to indemnify

his neighbor for any inconveniences or injury necessarily occasioned by the exercise of the right." In the latter case it is said: "Such a work must, of necessity, incommode the neighbor......; it may injure him in many ways, but so long and in so far as these injuries are inseparable from the exercise of the right, the neighbor is bound to submit to them and can claim no indemnity therefor." The case last cited being from Louisiana, the decision is influenced, ex necessitate, by local legislative provisions and the principles of the French law; but, as stated by us in Evans & Watson v. Jayne, 23 Pa. 34, 36, there are marked points of similarity between the French party-wall system and our own; as to this, see Washburn on Easements, 4th Ed., 623, 629, 630. Moreover, so far as the report shows, there does not seem to be any radical local legislative differences to distinguish the decision under consideration from the one at bar.

The case, which, on its facts, most nearly approaches the present one is Fowler v. Saks, 7 Mackey (D. C.) 570, 575, 581, cited by appellant, where recovery of damages was allowed; but the regulations for the District of Columbia expressly provide that the builder of a party-wall shall pay all damages thereby occasioned to the adjoining owner. Only one case, McKeon v. N. Y., N. H., etc., R. R. Co., 75 Conn. 343, 346, 347, has been cited to us where, in the absence of any such special provision as to damages, a recovery was allowed for losses occasioned by what the court there refers to as an exercise of the police power; but, while the subject of police power is discussed, it is plain that Judge BALDWIN, who wrote the opinion, decided the case (in no sense relating to party-walls) on the theory that the damages in question were due to an exercise of the right of eminent domain. Besides, much of the law laid down in this Connecticut case is contrary to the Pennsylvania view, as recently announced in the somewhat similar case of Iron City Auto Co. v. Pittsburgh, 253 Pa. 478, 493 et seq.

There seem to be but two Pennsylvania cases that in any manner directly discuss the question of an adjoining owner's right, in the absence of negligence, to recover from the building-owner of a party-wall damages occasioned by the removal of an old wall, namely, Lennig v. Dougherty, 45 Pa. Superior Ct. 198, 202, and Buck v. Weeks, 194 Pa. 522, 524, both of which arose in Philadelphia, where the relevant acts of assembly, referring to cities of the first class, expressly provide that, when an old party-wall is removed for the purpose of erecting a new one, the building-owner shall "make good all damages occasioned thereby to the adjoining premises"; but in neither instance was the question as to damages determined.

Before taking up the next subject for consideration, the defense of independent contractor, we may state that, owing to the length of this opinion, it does not seem expedient to discuss all of the numerous cases cited by counsel; but they have been examined, and those not herein mentioned, where recovery is allowed, either involve abortive attempts at the exercise of the police power, held to be, in reality, but instances of the exercise of the right of eminent domain, or they are cases involving an avowed exercise of the latter right; or, if not within either of these classes, then they are otherwise distinguishable on one of two grounds, namely, because the relevant legislation expressly conferred a right to damages, or because actual negligence was proved. For instance (referring to the last mentioned group), in McVey v. Durkin, 136 Pa. 418, 424, where this court sent the case back for retrial, we reduced and, in effect, limited the issues to an inquiry concerning the "careless manner in which the latter work [taking down the old wall] was prosecuted" and the resultant damages therefrom.

### VII.

As to plaintiff's contention that, if negligence must be shown to entitle him to recover, the proofs are suf-

ficient, it need only be said we concur with the learned
court below in finding the evidence inadequate to sustain
a verdict on the theory of negligent delay; and, so far
as we are concerned with the responsibility of defendant
for the alleged negligent manner in which the work was
carried on, the following statement from the opinion
of Judge Cohen covers that phase of the case: "De-
fendant having employed others, who were recognized as,
and proved to be, skilled and competent in their pro-
fession, and having given proper directions......for the
energetic......execution, in a proper manner,......
of the work involved......, it is apparent that defendant
...... is, therefore, legally relieved from liability in the
premises."

As said in the somewhat similar case of Negus v.
Becker, 143 N. Y. 303, 310, "The performance of the
work contracted for was neither dangerous, nor ex-
traordinary, in itself, and, hence, the rule applies that
for an injury resulting to another by reason of a negli-
gent performance, the remedy is solely against the con-
tractor."

Of course, if defendant were under "the liability of an
insurer to plaintiff," as the latter claims, then the former
could not escape its obligation by the employment of a
contractor; but, since we have decided that, under our
law, no such liability exists, cases from other jurisdic-
tions, where the governing acts of assembly place the re-
sponsibility of an insurer to the adjoining owner upon
the builder of a party-wall, are irrelevant, and the es-
tablished principles applicable to the defense of inde-
pendent contractor control; as to these generally, see
Painter v. Mayor of Pittsburgh, 46 Pa. 213, 221; Har-
rison v. Collins, 86 Pa. 153, 159; Miller v. Merritt, 211
Pa. 127, 134; and, on the application thereof to cases
involving party-walls, see Earl v. Beadleston, 42 N. Y.
Superior Ct. 294, 299, 300; Engel v. Eureka Club, 137
N. Y. 100, 105; and Butler v. Hunter, 7 H. & N. 825, 826,
832, where Pollock, C. B., says, inter alia: "It must be

assumed that directions were given to do the work in the ordinary way, and to take all proper precautions not to cause any mischief.   No doubt, where the act is in itself a nuisance, the party who employs another to do it is responsible for all the consequences......, but where the mischief arises, not from the act itself, but the improper mode in which it is done, the person who ordered it is not responsible unless the relation of master and servant exists"; all of which is pertinent to the case at bar.

### VIII.

The assignments of error are overruled and the judgment is affirmed.